STIMPSON and others, Respondents, vs. STIMPSON and another, Appellants.

*October 9—November 6, 1918.*

*Cancellation of instruments: Discretion: Mistake: Wills: Contract for different disposition of estate: Validity: Public policy.*

1. An application for cancellation of a contract is addressed to the sound discretion of a court of equity; and substantial mistake on the part of the party applying may be sufficient ground for relief, even though there was no intentional fraud.
2. By an agreement between the legatees named in a will and the widow (for whom no provision was made), her objections to the probate of the will were to be withdrawn, she was to receive a large part of the estate, and the remainder was to be distributed among the legatees. This agreement was signed by the legatees under a mistake, both as to the size of the estate and their rights therein, resulting from affirmative misstatements made without intentional fraud by one who, with the approval of the widow's attorneys, had undertaken to procure such signatures. *Held,* that in the absence of ratification or estoppel such agreement might properly be canceled in a suit by the legatees.
[3. Whether, no trusts being displaced and the parties with one exception being *sui juris,* said agreement was wholly void as against public policy, is not decided.]

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Modified and affirmed.*

This is an action in equity brought to cancel, on the ground of fraud, an agreement between the legatees under a will on one side and the widow of the testator on the other, by the terms of which the widow's objections to the probate of the will were withdrawn and provisions made for giving

the widow a considerable portion of the estate and distributing the remainder in different proportions from those fixed by the will.

The facts were not greatly in dispute and were substantially as follows: One Robert Stimpson, a childless widower seventy years of age, living in the village of Fennimore in Grant county, made his will in 1906, dividing the greater portion of his estate of nearly $25,000 among five nephews and nieces living at or near the village of Fennimore, but giving his homestead to *Fred Stimpson,* one of said nephews. Several years afterwards he married *Elizabeth Eastman,* a widow, who survives him and is one of the defendants in this action. The testator never formally revoked or modified his will and died in March, 1917, no children having been born of the second marriage. The will was presented for probate by Malachi Simons, the surviving executor, and an order of hearing made. The widow by her attorneys, Kopp & Brunckhorst, filed objections on the ground that the will had been revoked as matter of law by the testator's subsequent remarriage. On the day of hearing, May 1, 1917, formal proof of the execution of the will was made and the county judge took the question of revocation by the subsequent remarriage under advisement. Thereupon Mr. Brunckhorst, acting for the widow, and Mr. Frank E. Jenswold, an attorney of Fennimore, acting for the proponent, discussed the subject of compromise, the discussion resulting in the drawing up of the agreement in question, by the terms of which it was agreed that all the property should be distributed sixty per cent. to the widow and forty per cent. among the legatees in the same ratio provided by the will, and that in consideration of this agreement the objections to the will be withdrawn and the same admitted to probate. The agreement further contained an assignment and quitclaim by the legatees of all their interests in the real and personal property of the estate to the defendant *D. T. Parker,* as trustee, to distribute the estate as

provided by the agreement, and gave him authority to sell and deed all the property, real and personal. An additional clause provided for the distribution of the estate in the final decree in accordance with the stipulation. This proposed agreement was signed by Mr. Brunckhorst as attorney in fact for the widow, and taken by Mr. Jenswold to obtain the signatures of the legatees. Mr. Jenswold had not been employed by any of the legatees as their attorney at this time, but with the assent of Brunckhorst he took upon himself to go to the residences of the different legatees at or in the neighborhood of Fennimore as rapidly as possible and state to them in substance that in his opinion the will was revoked by operation of law on account of the remarriage; that the estate was worth probably $55,000; that he thought it would be a good thing for the legatees to save as much of the estate as possible; that if the will was set aside the widow would be the sole heir and would take the whole estate, hence that it would be advisable to settle and that the matter was urgent. The heirs did not know the value of the estate, employed no other lawyer, and one by one signed the agreement under these representations. The agreement having been signed by the legatees and by *Parker,* the widow's objections to the will were withdrawn and the will was admitted to probate. According to the findings of the trial court, based on disputed evidence, the legatee *Fred Stimpson* was then and has since remained hopelessly incompetent mentally. By consent of all parties defendant *Parker* was appointed administrator with the will annexed, gave bond, and proceeded to settle the estate. He sold and deeded the homestead to *Fred Stimpson* for $3,500 and took his note for the amount. The balance of the estate was personal and was speedily turned into cash or its equivalent. There is no testimony showing that the legatees received any information as to the size of the estate during the progress of the administration, although they were informed and approved of the sale of the homestead to *Fred.* They lived at a dis-

tance from the county seat and apparently were not accustomed to the transaction of business of a legal nature. Early in September, 1917, the administrator was ready to settle the estate and was then informed by the plaintiff *Robert Stimpson* that the legatees were going to contest the matter and that no distribution of the estate should be made under the agreement. *Mr. Parker,* however, made application for the settlement of his final account as administrator and the same came on to be heard before the county court of Grant county October 2d and a final order made assigning the estate to the legatees according to the terms of the will, except that the use of the homestead during widowhood as well as the household furniture and one third of the personal estate was assigned to the widow as provided by law in case of no provision being made for a widow in a will. The order provided also that it was made without prejudice to the agreements and assignments and conveyances theretofore made between the widow and the legatees. The plaintiff *Robert Stimpson* appeared at the hearing of October 2d and announced that the legatees repudiated the agreement, and at the same time it was announced to the county court by the attorneys of the legatees that their clients were willing that the order admitting the will to probate should be vacated. Notwithstanding this notice *Mr. Parker* within a few days paid the widow the sixty per cent. of the estate provided for by the agreement, amounting to nearly $14,000, and this action was brought October 20, 1917. It appears that at some time during the settlement of the estate the widow purchased a small home in the village of Montfort, where she now resides, and for which apparently she paid $600 or $700. During the progress of the action a guardian *ad litem* was appointed for the plaintiff *Fred Stimpson.* Upon these facts the trial court found that the plaintiffs were entitled to cancellation of the compromise agreement and rendered judgment accordingly.

For the appellants there were briefs by *Kopp & Brunck-*

*horst* of Platteville and *Frank E. Jenswold* of Fennimore, and oral argument by *L. A. Brunckhorst* and *A. W. Kopp.*

*Jesse J. Ruble* of Platteville and *Rufus B. Smith* and *Alfred H. Bushnell* of Madison, for the respondents.

A brief was also filed for respondent *Fred Stimpson* by *Geo. B. Clementson* of Lancaster, his attorney.

WINSLOW, C. J.   The findings of fact made by the trial judge are satisfactorily sustained by the evidence; in fact there is little dispute as to most of them.   He did not find Mr. Jenswold guilty of intentional fraud, but did find that he stated to most of the legatees that the estate would amount to $55,000 and that he did not state to the legatees their true rights nor the true rights of the widow, but told them that the will was void because of the marriage; that the plaintiffs were ignorant in respect thereto, believed his statements, thought he was looking after their interests, and, without negligence on their part, and supposing that if they did not accept the offer the widow would receive the whole estate, signed the agreement.

Certainly this state of facts entitles the plaintiffs to relief unless they subsequently ratified the agreement or are in some way estopped from contesting it.   An application for cancellation of a contract is addressed to the sound discretion of a court of equity.   Intentional fraud is not an essential.   Substantial mistake on the part of the party seeking relief may be sufficient if such course is in accordance with established rules of equity and seems reasonable and just to the court in view of all the circumstances of the case.   *Woldenberg v. Riphan,* 166 Wis. 433, 166 N. W. 21.   "It is the *suppressio veri* or the *suggestio falsi* which is the foundation of the right to relief in equity, and this exists whether it were fraudulently or mistakenly done."   *Peek v. Gurney,* L. R. 13 Eq. Cas. 79.   See, also, *Hammond v. Pennock,* 61 N. Y. 145; *Wilcox v. Iowa Wesleyan Univ.* 32 Iowa, 367; *Severson v. Kock,* 159 Iowa, 343, 140 N. W. 220; 9 Corp. Jur. p. 1167, § 18.

It is unquestioned here that the plaintiffs signed the agreement while laboring under a vital mistake both as to the law and the fact, which mistake was the result of affirmative misstatements made to them by Mr. Jenswold, who took on himself to procure their signatures with the approval if .not by actual direction of the attorneys of the widow.

This entitles them to relief in equity unless they have ratified the agreement by affirmative acts or are for some reason estopped. There is little in the case to support either defense. The only change in the situation of the parties which seems to us to be material or to require notice is the purchase of the homestead for $3,500 by *Fred,* the incompetent. It seems, however, that this may be easily set right. Before closing their case the plaintiffs offered to reconvey the property or to stipulate that the court might take up the matter as a part of the present case and finally adjust it as it ought to be adjusted. We construe this as a stipulation that the court in the present case might by its judgment cancel the deed and do what is necessary to finally close up the controversy. It seems also that *Fred's* note for $3,500 was taken by *Mr. Parker* and apparently is still held by him.

We think the judgment should be modified so as to require the defendant *Parker,* within sixty days after filing the *remittitur* herein in the circuit court, to surrender into that court for the use and benefit of *Fred Stimpson* the said $3,500 note, or, in case the said note has been negotiated and cannot be surrendered, that he deposit in court a sufficient bond, with sureties to be approved by the clerk, conditioned to protect said *Fred Stimpson* and his representatives against said note in the future and indemnify them if they be compelled to pay it. The judgment should also be modified by a provision canceling the deed from *Parker* to *Fred Stimpson* of the homestead, the same being the land fully described in the final order of the county court made in the Stimpson estate proceedings. The parties will then stand substantially as they would have stood had no agreement been made. We cannot regard the purchase by the widow of a small

home in Montfort as of any consequence on this question. Presumably it is worth all that she paid for it, nor is it affirmatively shown that she was induced to purchase it by reason of the making of the agreement in question. As to the household furniture, amounting to some $44, it appears to have been nominally sold to various legatees, but in fact it appears to be still in the homestead and subject to be taken by the widow at any time.

Upon the argument of the case the question was considerably debated whether the agreement was not wholly void because against public policy under the principles laid down by this court in the cases of *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; and *Estate of Staab,* 166 Wis. 587, 166 N. W. 326. The doctrine of the first of these cases is in brief that public policy requires that a valid will be probated regardless of the wishes of the parties interested, and that it is not within the power of the parties interested to agree to another plan of division and defeat the probate of a valid will. In the *Rice Case* the situation was somewhat different. There, a will containing numerous legacies in trust for infant legatees was presented for probate, objections were filed, and finally all the parties agreed, by way of settlement of the controversy (the infants acting by their guardians *ad litem*), that the will should be probated, but that the plans of the testator should not be carried out and that another plan of division, doing away with the trusts and dividing the property presently, should be carried out. This scheme also was condemned as practically accomplishing the same result as was attempted in the *Dardis Case.*

In the present case there were no trusts displaced and all the parties interested were *sui juris* with the exception of *Fred Stimpson.*

We do not find it necessary to decide whether the agreement here falls within the condemnation of the cases named or not, nor do we intimate any opinion thereon. We have

referred to the cases in order that it may not be supposed that we did not have the rule in mind.

*By the Court.*—Judgment modified as indicated in the opinion, and as so modified affirmed, with costs against the appellants.