WILL OF KEENAN: HAYDEN, Appellant, vs. NUZUM, Executor, Respondent.

*October 21—November 17, 1925.*

*Wills: Legacy revoked if legatee contests will: Validity: Public policy: Good faith and probable cause.*

1. To require a litigant to forfeit a substantial sum in case he is not successful in the prosecution in court of a *bona fide* claim of right, as by a provision in a will forfeiting a legacy to one contesting the will in good faith, is contrary to public policy.   p. 176.
2. Public policy requires that wills be probated and that probate courts be open to all litigants who have probable cause to have their claims adjudicated without incurring severe penalties.   p. 178.
3. When the conditions of a will, applied to the concrete facts of the case, are against public policy, they are void.   p. 179.
4. A condition in a will which in effect requires the forfeiture of the legacy of one who, upon probable cause and in good faith, contests the will, is contrary to public policy and void; and such legatee does not, by contesting the will, forfeit the legacy, if he acts upon probable cause and in good faith.   p. 179.

[5. This opinion is limited to cases where the contest was prose-cuted in good faith and upon probable cause, and the validity of the conditions here involved, where there is no probable ground for a contest, is not decided.]    p. 179.

APPEAL from a judgment of the county court of Milwaukee county: JOHN C. KAREL, Judge.    *Reversed.*

Antoinette A. Keenan died testate.    In her will she left a legacy of $2,000 to her nephew, *Mortimer M. Hayden,* the appellant in this case.    Her will contained this provision:

"In case any person to whom any legacy is given or to whom any beneficial use, interest, or income in any trust fund is given in my said last will and testament or either of my said codicils shall oppose the probate of my said last will and testament or either of my said codicils by the court having proper jurisdiction thereof or shall take any legal proceedings of any kind whatsoever in any court to set aside the said last will and testament or the said codicils or any of them or any part of them or shall co-operate or aid in any such proceedings or shall refuse to accept the provisions made for his or her benefit therein, then and in such case I hereby revoke all or any legacy or legacies in favor of any such person or persons and the legacy or legacies so bequeathed shall be then added to and become a part of the residue of my estate."

When the will of Mrs. Keenan was produced for probate in the county court of Milwaukee county *Mortimer M. Hayden* opposed the probate thereof on various grounds, and among others that the testatrix lacked testamentary capacity. Upon the admission of the will to probate in the county court *Mr. Hayden* appealed to the circuit court for Milwaukee county and therein contested the probate of the will.    The court took the advisory verdict of a jury, and it found that at the time of the execution of the will the testatrix was incompetent to make a will.    The court disregarded the verdict and admitted the will to probate.    From such judgment *Mr. Hayden* appealed to this court and the decision of the circuit court was by this court affirmed.    In view of such

proceedings the executor of the will petitioned for its construction in the county court upon the question as to whether or not *Mortimer M. Hayden,* the legatee, had forfeited his legacy by reason of contesting the probate of the will. In this latter proceeding it was stipulated between the parties that the contest was upon probable cause and prosecuted in good faith. The county court held that under the provisions of the will the legacy was forfeited, and from a judgment entered accordingly the legatee, *Mortimer M. Hayden,* appealed.

*George H. Katz* of Milwaukee, for the appellant.

*Charles J. Weaver* of Milwaukee, for the respondent.

VINJE, C. J. From the statement of facts it is apparent that we are called upon to decide whether or not a condition in a will providing for the forfeiture of a legacy in case the legatee, upon probable cause and in good faith, contests the probate of the will, is a valid condition and works a forfeiture of the legacy. The result of the decision will depend upon whether such a condition shall be held to be void on the grounds of public policy or whether it is within the legitimate field of private regulation and beyond public concern.

The principal authorities both English and American upon the general subject of the validity of conditions in wills providing for forfeitures of legacies or devises in case of a contest of the will by the legatee or devisee are as follows:

In *Cooke v. Turner,* 15 Mees. & W. 727 (1846), the facts were these: In 1826 Turner was judicially declared to be of unsound mind and the adjudication was never superseded. In 1841 he made a will containing a provision that, in case a legatee or devisee contested his competency to make a will or contested the will on any grounds, the devisee or legatee should forfeit his devise or legacy. The will provided, among other things, that certain lands should pass to

his daughter, and if she had no children to collateral kindred of the testator. His daughter had no ˙children, and she contested the validity of the will on the ground that the testator was incompetent to make the same. The court held the provision in the will was valid and not against public policy, and its reasoning˙ was substantially this: "There appears no more reason why a person may not be restrained by a condition from disputing sanity than from disputing any other doubtful question of fact or law on which the title of a devisee or grantee may depend." After discussing certain conditions which generally have been held contrary to public policy, such as conditions in restraint of marriage, in restraint of cultivating arable land, etc., the court concluded:

"But in the case of a condition such as that before us, the state has no interest whatever apart from the interest of the parties themselves. There is no duty on the part of an heir, whether of perfect or imperfect obligation, to contest his ancestor's sanity. It matters not to the state whether the land is enjoyed by the heir or the devisee; and we conceive, therefore, that the law leaves the parties to make just what contracts and what arrangements they may think expedient as to the raising or not raising questions of law or fact among one another, the sole result of which is to give the enjoyment of property to one claimant rather than another."

In that case the argument in behalf of the contestant was made that the proviso was bad as being contrary to the policy of the law. The court sums up the argument on that behalf as follows:

"The ground on which the argument against the proviso was made to rest was that every heir at law ought to be left at liberty to contest the validity of his ancestor's will, and that any restraint artificially introduced might tend to set up the wills of insane persons and would, in the language of the Touchstone, be 'against the liberty of the law.' "

It will thus be seen that the case was decided in view of the arguments usually made to sustain the position that such a condition in a will is contrary to public policy, and it

must be assumed by the reading of the whole case that the daughter had probable cause to contest the validity of the will and that the prosecution of such contest was made in good faith. The case is therefore one which holds that such conditions in wills are valid and are enforceable and not against public policy irrespective of the question of probable cause or good faith. This case was approved in the case of *Evanturel v. Evanturel*, 6 Privy Council App. 1 (1873). In *Sackett v. Mallory*, 1 Met. (42 Mass.) 355 (1840), there was a proviso in a will that if any devisee or legatee made any claim upon the estate he should forfeit his legacy or devise. The testator devised certain lands to C. and R. C. made a claim upon the estate which was allowed and paid by the executor. It was held that he thereby forfeited his interest in the real estate devised to him and that the whole of such real estate should pass to R., who had made no contest.

In *Donegan v. Wade*, 70 Ala. 501 (1881), it was held without much discussion that a provision in a will forfeiting a legacy or devise in case of contest was valid. It was said in substance that the evident purpose of it was to prevent useless litigation and the squandering of estates and that a testator could attach such conditions to his legacies as he saw fit.

In *Bradford v. Bradford*, 19 Ohio St. 546 (1869), it was held that a condition in a will whereby the testator excluded any one of his heirs who should "go to law to break his will" from any part of his estate was valid. The case was decided largely upon the authority of *Cooke v. Turner*, 15 Mees. & W. 727 (1846), and upon the idea that it matters not to the state whether the land is enjoyed by the heir or devisee. It is said:

"It is the duty of the court to carry out the intention of the testator unless that intention be contrary to the policy of the law. No considerations of public policy require that an heir should contest the doubtful questions of fact or of law upon which the validity of a devise or a bequest may

depend.    The determination of such questions ordinarily affects only the interests of the parties to the controversy."

In *Hoit v. Hoit,* 42 N. J. Eq. 388, 7 Atl. 856 (1886), it was held that a provision in a will to the effect that any one contesting the will should pay the expenses of both sides was a valid condition and enforced against a devisee who contested the provisions of the will.

The supreme court of California in the case of *Estate of Hite,* 155 Cal. 436, 101 Pac. 443 (1909), also reported in 21 L. R. A. N. S. 953, has held that a provision of forfeiture in case of a contest of a will is not void as against public policy and has done so largely upon the reasons contained in *Cooke v. Turner.*

In the case of *Estate of Miller,* 156 Cal. 119, 103 Pac. 842 (1919), also reported in 23 L. R. A. N. S. 868, they applied the same ruling to a case in which it appeared that the contest of the will was upon probable cause.    The court said:

"Appellant's principal contention is that there was no forfeiture in this case for the reason that she had probable ground for contest.    A similar question was presented by the briefs in *Estate of Hite, supra,* but was there dismissed by the court without discussion.    No such exception is stated in the contest provision contained in the will, and we know of no principle that authorizes us to declare it.    To so do would be to substitute our own views for a clearly expressed intent of the testator to the contrary.    We are aware that some text-writers have expressed views tending to support appellant's contention in this behalf, and that it is the rule adopted in Pennsylvania (*Friend's Estate,* 209 Pa. St. 442, 58 Atl. 853, 68 L. R. A. 447), but we cannot perceive any proper basis upon which to rest such a conclusion."

In *Moran v. Moran,* 144 Iowa, 451, 123 N. W. 202 (1909), also reported in 30 L. R. A. N. S. 898, the provision of the will was:

"I further declare and provide that in case any of the legatees named as beneficiaries in this instrument shall con-

test the same, such beneficiary or legatee or beneficiaries or legatees making such contest shall forfeit thereby his right to any portion of my estate and the provision or legacy provided in this will for such beneficiary or legatee or beneficiaries or legatees shall thereby become the property of my said wife, I. L. Moran, absolutely, in her own right."

In sustaining the validity of this portion of the will the court said:

"For ourselves we cannot believe that public interests are in any manner prejudiced or the fundamental rights of any individual citizen in any manner violated by upholding a gift or bequest made on condition that the donee waive or release his claim to some other property right, or even upon condition that he observe some specified line of personal conduct not in violation of law or contrary to good morals. The donee is under no compulsion to accept the gift. He is free to elect. The question he has to decide is the ordinary one which arises in nearly every business transaction— whether the thing offered him is worth the price demanded. The owner of property may give or refrain from giving. He may attach to his offer such lawful conditions as his reason, caprice, or malice may dictate, but he is dealing with his own, and the donee who claims the benefit of the gift must take it, if at all, upon the terms offered." Mr. Chief Justice EVANS dissented.

Such in brief are the cases and the grounds upon which they are based which uphold the validity of such conditions in a will. In some of the cases discussed above it is not possible to determine from the report of the case whether or not there was probable cause for the contest. The decisions seem to have gone on the theory that it was immaterial whether or not there was probable cause for contesting the validity of the will.

In the following cases the question was limited, as it is in the case at bar, to a situation where there was probable cause for the institution of the contest:

In *Powell v. Morgan,* 2 Vern. 90 (1688), the question was disposed of as follows by the court: "There was *prob-*

*abilis causa litigandi,* and it was not a forfeiture of the legacy."

In *Morris v. Burroughs,* 1 Atk. 399, 404 (1739), it is said: "There was a provision made by the will that any legatee controverting the disposition the testator had thereby made of his estate should forfeit his legacy. This was held clearly to be *in terrorem* only, and that no such forfeiture could be incurred by contesting any disputable matter in a court of justice."

In *Loyd v. Spillet,* 3 P. Wms. 344 (1734), it was held that legatees contesting the validity of the will were not to be deprived of their legacies because of such contest. It does not appear whether or not the court held that the contest was upon probable cause. Presumably it was so held because the court characterizes the defense as not deserving the least favor by the decree.

In *Smithsonian Institution v. Meech,* 169 U. S. 398, 413, 18 Sup. Ct. 396, the court quotes this statement of the law with approval taken from 1 Roper, Legacies (2d Am. ed.) 794:

"When legacies are given to persons upon condition not to dispute the validity of or the dispositions in wills or testaments, the conditions are not in general obligatory, but only *in terrorem.* If, therefore, there exist *probabilis causa litigandi,* the non-observance of the conditions will not be forfeitures. *Powell v. Morgan,* 2 Vern. 90; *Morris v. Burroughs,* 1 Atk. 404; *Loyd v. Spillet,* 3 P. Wms. 344. The reason seems to be this: A court of equity does not consider that the testator meant such a clause to determine his bounty, if the legatee resorted to such a tribunal to ascertain doubtful rights under the will, or how far his other interests might be affected by it; but merely to guard against vexatious litigation."

In *Jackson v. Westerfield,* 61 How. Pr. 400 (1881), it was held that legatees who in good faith and upon probable cause contested the validity of wills did not forfeit their legacies though the will so provided.

The same ruling was made in the case of *In re Kathan's Will,* 141 N. Y. Supp. 705, and the authorities are there reviewed at considerable length.

In *Matter of Kirkholder,* 171 App. Div. 153, 157 N. Y. Supp. 37, the court followed the ruling of the case of *In re Kathan's Will.*

In *Bryant v. Thompson,* 59 Hun, 545, 14 N. Y. Supp. 28 (1891), it was held that a condition of forfeiture in a will was void as to an infant, that he might contest the validity of the will and still receive his legacy, because such a condition interposed against an infant was held to be contrary to the policy of the law. It was assumed in that case that such a condition would be valid as against an adult. An appeal from the decision was dismissed. See 128 N. Y. 426, 28 N. E. 522.

Speaking of the decisions that sustain a forfeiture the supreme court of Connecticut in the case of *South Norwalk T. Co. v. St. John,* 92 Conn. 168, 175, 101 Atl. 961, says:

"Their underlying principle is, that since the testator may attach any condition to his gift which is not violative of law or public policy, the legatee must either take the gift with its conditions or reject it. The disposition of these authorities has been to sustain forfeiture clauses as a method of preventing will contests, which so often breed family antagonisms and expose family secrets better left untold, and result in a waste of estates through expensive and long drawn-out litigation."

Then further on, stating its own position, the court says:

"The exception that a contest for which there is a reasonable ground will not work a forfeiture stands upon better ground. It is quite likely true that the authorities of greater number refuse to accept this exception, but we think it has behind it the better reason. It rests upon a sound public policy. The law prescribes who may make a will and how it shall be made; that it must be executed in a named mode, by a person having testamentary capacity and acting freely, and not under undue influence. The law is vitally interested

in having property transmitted by will under these conditions and none others. Courts cannot know whether a will, good on its face, was made in conformity to statutory requirements, whether the testator was of sound mind, and whether the will was the product of undue influence, unless these matters are presented in court; and those only who have an interest in the will, will have the disposition to lay the facts before the court. If they are forced to remain silent, upon penalty of forfeiture of a legacy or devise given them by the will, the court will be prevented by the command of the testator from ascertaining the truth; and the devolution of property will be had in a manner against both statutory and common law. Courts exist to ascertain the truth and to apply the law to it in any given situation; and a right of devolution, which enables the testator to shut the door of truth and prevent the observance of the law, is a mistaken public policy. If, on contest, the will would have been held invalid, the literal interpretation of the forfeiture provision has suppressed the truth and impeded the true course of justice. If the will should be held valid, no harm has been done through the contest, except the delay and the attendant expense."

In his work on Wills, Schouler (6th ed.), vol. 2, § 1344, says:

"Modern wills seek, in some instances, to prevent litigation by forbidding the beneficiaries named to dispute the will. The law on this point is likely to be more firmly settled hereafter than it is at present. To exclude all contest of the probate on reasonable ground that the testator was insane or unduly influenced when he made it is to intrench fraud and coercion more securely; and public policy should not concede that a legatee, no matter what ground of litigation existed, must forfeit his legacy if the will is finally admitted. As for construction proceedings, the testator's own language may have rendered them necessary. On the other hand, while the probate of the disputed will does not conclude that there was no just cause for opposing it, the testator's last wishes are authenticated as he expressed them; and both in probate and construction proceedings, all speculative and heartless litigation, by which so many estates

have been wasted, may well be discountenanced. No arbitrary rule meets well the cases likely to arise under this head, but circumstances ought to influence the construction."

Mr. Schouler points out the significant fact that the ruling in *Cooke v. Turner,* 15 Mees. & W. 727 (1846), so much relied upon, was only a *dictum* ruling because the will had not been admitted to probate, and that it would seem to be outweighed by *Rhodes v. Muswell Hill L. Co.* 29 Beav. 560, where such a condition was declared bad. 2 Schouler, Wills (6th ed.) § 1344. He then goes on to state:

"On this topic in this country there is still much confusion and conflict of decision, but we believe it may be laid down as the true American rule, supported by the weight of authority and the better reasoning, that these conditions depend upon whether the contest was made on fair and reasonable grounds, that the policy of the law will not allow one who has every reason to believe that a will offered is a forgery or the result of fraud or undue influence or the work of an insane man to be penalized for calling his evidence to the attention of the court by suffering the loss of any rights under the contested instrument. It is fundamental that the courts are free to all, and no man should be driven to the alternative of keeping silent or suffering a loss of rights, especially as such clauses are potent instruments of fraud in deterring examination into the conduct of the unscrupulous. These reasons do not hold when the contest is made on flimsy grounds."

In *Whitehurst v. Gotwalt,* 189 N. C. 577, 127 S. E. 582 (1925), the court said:

"Where there exists *probabilis causa litigandi,* that is, a probable or plausible ground for the litigation, a condition in a will that a legatee shall forfeit his legacy by contesting the will is not binding, and under such circumstances a contest does not work a forfeiture."

But in that case it was found as a fact that no probable cause existed and the forfeiture clause was held valid.

In *Rouse v. Branch,* 91 S. C. 111, 74 S. E. 133, 39 L. R. A. N. S. 1160, decided in 1912, the court said:

"The right of a contestant to institute judicial proceedings upon probable cause to ascertain whether the will was ever executed by the apparent testator is founded upon justice and morality. If a devisee should accept the fruits of the crime of forgery under the belief and upon probable cause that it was forgery, he would thereby become morally *particeps criminis;* and yet, if he is unwilling to commit this moral crime, he is confronted with the alternative of doing so, or of taking the risk of losing all under the will, in case it should be found not to be a forgery. Public policy forbids that he should be tempted in such a manner. This is far more obnoxious to public policy than a condition in the will against marriage."

This case is followed in the case of *Sherwood v. McLaurin,* 103 S. C. 370, 88 S. E. 363.

In *Friend's Estate,* 209 Pa. St. 442, 58 Atl. 853, 68 L. R. A. 447, the court says:

"The better rule, however, seems to us to be that the penalty of forfeiture of the gift or devise ought not to be imposed when it clearly appears that the contest to have the will set aside was justified under the circumstances, and was not the mere vexatious act of a disappointed child or next of kin. A different rule—an unbending one,—that in no case shall an unsuccessful contestant of a will escape the penalty of forfeiture of the interest given him, would sometimes not only work manifest injustice, but accomplish results that no rational testator would ever contemplate. This is manifest from a moment's reflection, and is illustrated by the class of cases to which the one now before us belongs, in which there is an allegation of undue influence which procured the execution of the will. If, as a matter of fact, undue influence is successfully exerted over one about to execute a will, that same influence will have written into it a clause which will make sure its disposition of the alleged testator's property. He who will take advantage of his power to unduly influence another in the execution of a will, will artfully have a care to have inserted in it a clause

to shut off all inquiry as to the influence which really made the will."

And this case cites with approval what was said by the court in *Chew's Appeal,* 45 Pa. St. 228. The latest exhaustive case we have found on the subject is *Tate v. Camp,* 147 Tenn. 137, 245 S. W. 839 (decided in 1922). The same case is also reported in 26 A. L. R. 755. In that case it was held that where probable cause exists for the contest of the will no forfeiture results. The authorities, both English and American, are reviewed at considerable length.

Speaking of the statement to the effect that there is no duty of perfect or imperfect obligation on an heir to contest his ancestor's sanity and that it matters nothing to the state whether the land is enjoyed by the devisee or the heir, contained in the case of *Cooke v. Turner,* 15 Mees. & W. 727, Chancellor WARDLAW of South Carolina, in *Mallet v. Smith,* 6 Rich. Eq. 12, says:

"It seems to me that this is a very narrow view of public policy. It is to the interest of the state that every legal owner should enjoy his estate and that no citizen should be obstructed by risk of forfeiture from ascertaining his rights by the law of the land. It may be policy to encourage enemy parties in the adjustment of doubtful rights by arbitration or by private settlement; but it is against the fundamental principles of justice and policy to inhibit a party from ascertaining his rights by appealing to a tribunal of the state to settle and determine conflicting claims. If there is such a thing as public policy it must embrace the right of the citizen to have his claims determined by law."

The precise question presented by this appeal has not been passed upon by our court, hence it has been thought advisable to take a general view of the subject as presented by leading English and American cases. Such view discloses the grounds upon which each line of authorities bases its decisions, and these grounds will not be attempted to be

restated except in so far as they form an integral part of the reasons that have actuated us in reaching our conclusion.

What is or is not public policy in a given state may vary, and especially so as between a limited monarchy such as England and a .democratic form of government such as we have.

If we recur to our own organic state law we find the fundamental provision that "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." Sec. 9, art. I, Const. This is a basic and valuable guaranty that the courts of the state should be open to all persons who in good faith and upon probable cause believe they have suffered wrongs. Is it not against public policy to permit one person to deprive another from asserting his rights in court? And especially so before it is ascertained that the prohibition against contest is in fact that of the testator and not that of one exercising undue influence over him, or that he was mentally competent to make it? That was the inquiry in this case when the will was presented for probate. It was claimed that the testatrix was not mentally competent to make the will. True, such claim was negatived after the judicial inquiry, but the claim might have been well founded. We deem that it is contrary to the public policy of our state to require a litigant to forfeit a substantial sum in case he is not successful in the prosecution in court of a *bona fide* claim of right. *Smith v. Sherry,* 54 Wis. 114, 11 N. W. 465; *Fehrman v. Bissell L. Co., ante,* p. 82, 204 N. W. 582. And this is especially·so as to the probate of a will. Our statutes, secs. 310.01 to 310.03, make it the duty, under heavy penalties for the neglect thereof, of county judges, executors, or other persons who may be in possession of wills to present the same for probate within

periods therein named.   These sections disclose that it is
the public policy of our state that wills should be probated;
that the state requires that the succession of property should
be conformably to law.   And upon this subject our court
has spoken in no uncertain terms.

In the case of *Will of Dardis*, 135 Wis. 457, 115 N. W.
332, it was held that a stipulation as to the mental capacity
of a testator was not binding upon the court.   On the con-
trary it was held that the probate of a will was "a proceed-
ing *in rem*, involving considerations of public welfare and
policy, and while it affects specific individuals it also affects
many other interests, including those of decedent, some of
which cannot be ascertained in advance, and the instrument
should be established regardless of those directly interested."
After enumerating the statutory steps required for the pro-
bate of a will the court says: "They evince a clear recogni-
tion and declaration of the legislature that there is a public
policy involved in the establishment of every legally ex-
ecuted will."

Speaking of this decision in the case of *Will of Rice*,
150 Wis. 401, 446, 136 N. W. 956, 137 N. W. 778, the
court said:

"Therefrom the conclusion was reached that regardless
of holdings elsewhere, in this state a will, once validly made
and subsisting to the death of the testator, must be taken
and judicially enforced according to his intent, if that can
be ascertained; that parties cannot be permitted, even though
all interested join, by any agreement between themselves or
any subterfuge to displace the dying wish of the testator;
that in respect thereto the public at large are, under the
policy of our law, so far concerned in the establishment of
such a will that the proceedings to that end are in the nature
of an action *in rem*, the whole body of the people being
parties."

The doctrine laid down in these two cases has been re-
stated and followed in the cases of *Will of Reynolds*, 151

Wis. 375, 138 N. W. 1019; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 159 N. W. 737; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326; *Estate of Sipchen,* 180 Wis. 504, 193 N. W. 385, and must be considered to be the established policy of this state with reference to the probate of wills.

How jealously public policy guards free access to the courts ordained to administer justice in the respective matters involved is exemplified in the ruling of our supreme federal court holding void legislative enactments of states excluding foreign corporations from the federal courts as a condition upon doing business within the state. *Terral v. Burke C. Co.* 257 U. S. 529, 42 Sup. Ct. 188, 21 A. L. R. 186, and cases cited. In the latter case the rule was extended to deny the right to a state to revoke the license of a foreign corporation doing intrastate business only, on the ground that it violated the state requirement not to bring a suit in the federal courts. And in the case of *Home Ins. Co. v. Morse,* 20 Wall. 445, it was held that an agreement between a foreign corporation and the state of Wisconsin that cases should not be removed to the federal courts was void, since the agreement could not confer greater validity than the unconstitutional Wisconsin statute providing that a foreign corporation could not do business within the state unless it stipulated that it would not remove into the federal courts cases begun against it by citizens of the state.

From the foregoing we deem that it is the public policy of our state that our probate courts should be open to all litigants who have probable cause to have their claims adjudicated upon without the incurring of severe penalties; that a sound public policy dictates that the truth of a disputable claim shall be ascertained as the law provides; that since courts are instituted to administer justice within the state there should be no penalties attached to the performance of that function.

Of course we agree with that part of the argument of courts who hold all such conditions valid to the effect that a testator has the right to attach whatever lawful conditions he sees fit to a legacy or devise. But that does not answer the question, What constitutes a lawful condition? Nor does it solve the claim that it is not the condition of the testator because the will is the result of undue influence or the product of an incompetent testator. These latter questions usually lie at the threshold of probate proceedings and can be settled only by a judicial inquiry, and that the inquiry should not be prevented by penalties where there is probable cause to raise such questions.

It is urged by the respondent that an interpretation of the will such as we have reached adds to the condition therein the words "without probable cause." Not so. We are not interpolating such words into the will. We simply say that when the conditions in a will applied to the concrete facts of the case are against public policy they are void. If when so applied they are not against public policy they are valid. Nothing is added to or taken from the letter of the will.

We have been asked by respondent to decide the validity of such conditions in cases where there is no probable cause for a contest and to declare them either valid or void. We do not deem it prudent to decide more than what is involved in this appeal. The opinion, therefore, is limited to a case where the contest was prosecuted in good faith and upon probable cause.

We have purposely refrained from injecting into the discussion the different views that obtain in the decisions as to the effect of forfeiture conditions where there is or is not a devise or bequest over in case of a lapse, or whether a devise or bequest over to the residuary estate is sufficient. We have also eliminated all discussion relating to the differences between gifts of personal property and devises of real estate.

For valuable notes on this subject and as to what constitutes a contest, see 68 L. R. A. 447; 21 L. R. A. N. S. 953; 39 L. R. A. 1160; 5 A. L. R. 1370; 14 A. L. R. 609, and 26' A. L. R. 764.

Counsel on both sides presented unusually helpful briefs and oral arguments.

*By the Court.*—Judgment reversed, and cause remanded with directions to allow appellant his legacy.