WILL OF STANLEY: STANLEY and others, Appellants, vs. STANLEY and another, Respondents.

*October 14, 1936—January 12, 1937.*

346

For the appellants there was a brief by *Knowles & Doolittle* of River Falls, and oral argument by *L. S. Doolittle*.

For the respondents there was a brief by *Frawley & Stolts* and *W. H. Frawley, Jr.*, all of Eau Claire, and oral argument by *W. H. Frawley, Sr.*

The following opinion was filed November 10, 1936:

FRITZ, J.   The order dated March 16, 1936, the last of three orders appealed from, was evidently intended to supersede in substance and effect the first and the second of those orders.   Consequently, it suffices to consider the substance and effect of that last order, and if it cannot be sustained, the other orders must likewise be reversed.   In passing upon those orders, which were all made upon hearings pursuant to William H. Stanley's petition filed in December, 1935, for the construction of the will of his father, Lemuel C. Stan-

ley, it suffices to note the following facts and propositions: Upon the death of Lemuel C. Stanley in 1909, his will was promptly admitted to probate in the county court of Chippewa county, and the estate is still in the process of administration. The will named a son, Frederick S. Stanley, as executor without bond, and he was immediately appointed. He served until removed by the court in April, 1917, when Elmer M. Bradford was appointed and qualified as administrator *de bonis non* (hereinafter called the "administrator") with the will annexed.

Frederick S. Stanley and the petitioner, William H. Stanley, were the only surviving children of the decedent, and in the will he provided for each of them. But on this appeal, only the following provisions, in relation to the petitioner, are involved, to wit:

"Third: I give, grant, devise and bequeath under the condition and subject thereto as herein named, unto my son William H. Stanley, the sum of fifty thousand dollars ($50,000) income only shall be paid to him during his lifetime, and at his decease, the said sum of fifty thousand dollars ($50,000) to be paid to his children Lemuel, Cornelius, Wilber and Mildred Stanley, and in case any of those children are not living at the time of my decease, the survivor to have the share of the one of those deceased."

"Ninth: And I further will and direct my executor shall invest the fifty thousand dollars ($50,000) bequeathed to my son William H. Stanley, in such manner and in such property as shall in his discretion seem best and the annual income only be paid to him during his life, and at his death, said sum of fifty thousand dollars ($50,000) shall be paid to the children of said William H. Stanley, then living, and so bequeathed to them."

"Fifth: That in case I did not during my lifetime purchase and convey to my son, William H. Stanley, to have and to hold during his lifetime, and at his death to go to his children, a farm of the value of five thousand dollars ($5,000) I will and direct that my executor shall purchase

a farm of the value of at least five thousand dollars ($5,000), and cause the title thereof to be conveyed to my son, William H. Stanley, to have and hold during his lifetime, and at his death to his children then living, and so will, devise and bequeath."

There is no ambiguity in those provisions, and there has never been any occasion or room for doubt as to the meaning and intention expressed therein by the testator. In and by the third and ninth paragraphs, he clearly and definitely created a $50,000 trust fund for the benefit of William H. Stanley and his children, by the segregation of assets of that value and the investment thereof by his executor in such manner and in such property as seemed best in the latter's discretion; and, in respect to the disposition of the income and the corpus of that fund, he expressly provided that the "income only shall be paid to him during his lifetime, and at his decease, the said sum of fifty thousand dollars ($50,000) to be paid to his children" then living. Manifestly, under those provisions William H. Stanley was to receive all the annual income, but there was no authorization to use any of the corpus of that trust fund in order to give him an annual income therefrom at the rate of six or any other fixed percentage thereon.

Likewise, unambiguous and without occasion for any departure from the definitely expressed meaning and intention of the testator was the command in the fifth paragraph that the "executor shall purchase a farm of the value of at least five thousand dollars ($5,000), and cause the title thereof to be conveyed to my son, William H. Stanley, to have and hold during his lifetime, and at his death to his children then living." That provision did not create a trust. On the contrary, it devised a life estate to William H. Stanley in a farm which the executor was required to purchase, and it devised the remainder, after that life estate in that farm, to such of

William H. Stanley's children as survived him. William H. Stanley was entitled only to the possession and use, during his lifetime, of the farm when purchased. No payment by the executor of interest on the authorized purchase money pending the investment thereof in a farm was authorized by the will.

However, although the inventory and appraisal filed at the outset of the administration showed the following assets,—

"Real estate..............................$107,672.59
"Cash and certificates of deposit........... 90,453.43
"Other personal property................ 240,453.51

"Total estate.......................$438,579.53 ;"—

and the indebtedness of the estate as shown by the judgment on claims was but $60; and an inventory filed in July, 1917, by the administrator, in April, 1917, showed assets totaling at $285,802.68; and (as the trial court rightly found, in making its order of March 16, 1936) ever since the testator's death, the property belonging to his estate, over and above the debts, liabilities, and expenses of administration, was such that the executor, as well as the administrator, could readily have converted portions of the estate into money and placed the $50,000 in a trust fund, and also invested the $5,000 in a farm in accordance with the will; and the property of the estate still remaining was at all the times since the testator's death, and still is reasonably valued at more than $100,000, neither the executor nor the administrator ever set up the trust fund provided for in the third and ninth paragraphs, or purchased the farm as prescribed in the fifth paragraph of the will. Instead of doing that and administering the estate in accordance with the provisions in those paragraphs, the executor, and subsequently the administrator, with the acquiescence of all the beneficiaries, as well as of the county

court judges presiding, from time to time, proceeded to administer the estate in accordance with other schemes substituted by arrangements or agreements between the parties for the definite testamentary dispositions made in the will.

Thus, contrary to the testator's expressed intention, the county court ordered, in November, 1910, upon a petition of the executor and William H. Stanley, stating that they had entered into an arrangement to that effect, that the purchase of the farm be postponed, and that in lieu thereof the executor should, in the meantime, pay to William H. Stanley interest, at the rate of six per cent per annum, on the authorized purchase price. After that, the executor, and subsequently the administrator, instead of purchasing a farm and also setting up the $50,000 trust fund, as provided in the will, and paying only the income thereof to William H. Stanley as authorized by the will, chose to and did pay to him $3,300 per year as interest at the rate of six per cent per annum on $55,000; and, in April, 1917, and July, 1925, on petitions for the removal of the executor and the administrator, respectively, the county court judges, in passing upon their administration, approved the executor's and the administrator's course in making those payments, and treated the amounts of $50,000 and $5,000 as a trust fund of $55,000 for the benefit of William H. Stanley, which should draw interest at six per cent, payable annually to him out of said estate. However, upon the first of those petitions, the court granted the relief sought by removing the executor; and, upon the second petition, although the application to remove the administrator was denied without prejudice, the court, in its decision, said:

"The fact that Fred Stanley, as executor, failed to comply with the provisions of Clause Thirteen, does not relieve the administrator *de bonis non* from the duty of complying with it. He should now within such reasonable time as prudent

business management will permit, convert sufficient of non-income assets into income bearing securities to enable him to set up the fund for William's benefit referred to in Clause Thirteen.

"In arriving at the sum on which income shall be figured, there will be deducted all sums paid to William out of the corpus bequeathed to his children, under Clause Three, and also such sums as have heretofore been paid to the children, provided the father execute the release above referred to.

"At the time of rendering his next annual report, the administrator *de bonis non* will make as a part of it a statement to the following effect:

"1. Showing the amount paid to William each year from income and from corpus.

"2. Showing the face value of the securities in his hands from which the income annually is derived.

"3. Computing income at the rate of 6% on the difference between the value of the securities in his hands and the balance of the fifty thousand dollars ($50,000) fund as it may annually appear.

"I desire that this statement shall be so made that it will show on its face the net amount remaining in the fifty thousand dollars ($50,000) fund each year on which income, at the rate of 6% per annum is computed."

It does not appear that any such statements were ever filed, and neither in that decision, nor thereafter, did the court determine with finality the amount left of the corpus of the trust fund, or the amount to be thereafter paid as the income thereon.

However, in accordance with the schemes substituted, as stated, for the provision of the will, the executor paid to William H. Stanley annually out of the income and the corpus of the estate all excepting $3,200 of the interest which accrued under those schemes up to April 4, 1917; and from that date up to February 5, 1936, the administrator likewise paid to William H. Stanley $27,307.01 on account of that unpaid balance of $3,200, and the additional sum of

$61,609.18, which accrued as interest under those schemes from April 4, 1917, to February 5, 1936. Those payments left $37,502.17 unpaid on account of such accrued interest, and that amount the court in its order of March 16, 1936, directed the administrator to pay to William H. Stanley out of the estate's assets with interest at six per cent per annum from February 5, 1936. In addition the court also directed the administrator to pay $3,300 annually from that date to William H. Stanley, during his life, as interest on the $55,000. However, in connection with ordering the payment of the $37,502.17, the court expressly reserved the power to fix, by a future order, the time or times and in what sum or sums that $37,502.17 should be paid, and ordered the payment thereof stayed in the meantime. Likewise, in connection with ordering the payment of $3,300 annually thereafter, the court reserved the power to fix the times of such payments by a future order, and ordered that meanwhile the administrator will continue the payment of $150 per month, as directed by an order theretofore made by the court.

Most of the matters stated above, as well as others similar thereto that appear in the extensive record herein, disclose an astounding deliberate and continuous disregard by the representatives of the estate and all interested therein, as well as by the court, of their duties in administering an estate under a will, and in executing the trusts created thereby, faithfully in accordance with the testator's intention as expressed in the valid provisions of his will. It is elementary that all participating in the administration of trust estates must constantly abide by the well-established rule that,—

"Neither the trustees, nor the courts in passing upon the administration of trust estates, can disregard the safeguards prescribed by law or instruments of trust for proper man-

agement and preservation of trust funds." *Estate of Dreier,* 204 Wis. 221, 225, 235 N. W. 439.

As we said in *Will of Leonard,* 202 Wis. 117, 124, 230 N. W. 715,—

"Courts should zealously protect and preserve estates placed by the law under their control. ' . . . The standard of care in protecting property rights under judicial control, in the administration of trusts, depends upon the conceptions of duty by trial judges and the pains taken by them to make the same effective.' *Sloan v. Duffy,* 117 Wis. 480, 486, 94 N. W. 342."

The proper performance of that duty requires the court, whenever its jurisdiction to supervise the administration of a trust is invoked,—

"To enforce the validly expressed intent of a testator and to discover such intent where there is obscurity. Neither courts nor beneficiaries nor legislatures are competent to violate such intent and substitute their discretion for that of the testator." *Upham v. Plankinton,* 152 Wis. 275, 283, 140 N. W. 5.

As we again said recently,—

"The power exercised by courts of equity to enforce the administration of trusts is a supervisory power. It is exerted to carry out the intention of the settlor. Courts of equity will do all within their power to see that the trust is executed in accordance with its terms." (p. 102.)

"From the beginning, for the reasons stated, courts exercising equity powers have been charged with the duty of taking such action upon their own motion as was necessary to carry out the intention of the creator of the trust. From the very nature of things the continuation of a trust is often burdensome to the trustee and to the beneficiaries present and remote, and for that reason all sorts of devices have been resorted to in an effort to move courts of equity to modify the terms of the trust or, as in this instance, to terminate it. The courts have, on the other hand, refused

to yield to the importunities of interested parties, and save for some well-established exceptions require the trustee to administer the trust in the manner laid down by the settlor. If the trustee refuse or fail the court will appoint another trustee.

"In no jurisdiction perhaps have courts adhered more firmly to these fundamental principles than in the state of Wisconsin." (pp. 98, 99.) *Will of Stack,* 217 Wis. 94, 258 N. W. 324.

That is in accord with the principles well established in this state that neither the parties interested in an estate, nor the court in which it is being administered can substitute, while the estate is in the process of administration, any other scheme for the disposition of a testator's estate than that which is stated in the valid and enforceable provisions in his will. Any arrangement or agreement to the contrary between the parties for the substitution of some such scheme is null and void; and any judicial order purporting to authorize or approve such a substituted scheme which is contrary to the express terms of a will is *coram non judice.* *Will of Rice,* 150 Wis. 401, 444, 453, 136 N. W. 956, 137 N. W. 778, and cases there cited. See also *Will of Reynolds,* 151 Wis. 375, 138 N. W. 1019; *Upham v. Plankinton, supra; Estate of Staab,* 166 Wis. 587, 166 N. W. 326; *Stimpson v. Stimpson,* 168 Wis. 146, 169 N. W. 295; *Will of Johnson,* 175 Wis. 1, 183 N. W. 888; *Ball v. Boston,* 153 Wis. 27, 141 N. W. 8; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 159 N. W. 737; *Guardianship of Reeve,* 176 Wis. 579, 186 N. W. 736; *Estate of Sipchen,* 180 Wis. 504, 193 N. W. 385; *Niles v. Rogovsky,* 182 Wis. 372, 196 N. W. 836; *Will of Keenan,* 188 Wis. 163, 205 N. W. 1001; *Estate of Wilkins,* 192 Wis. 111, 211 N. W. 652; *Will of Zweifel,* 194 Wis. 428, 216 N. W. 840; *Simpson v. Cornish,* 196 Wis. 125, 218 N. W. 193; *Will of Schilling,* 205 Wis. 259, 237 N. W. 122; *Graef v. Kanouse,* 205 Wis.

597, 238 N. W. 377; *Taylor v. Hoyt,* 207 Wis. 520, 242 N. W. 141; *Newcomb v. Ingram,* 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171. Consequently, all schemes pursuant to agreements between the executor or the administrator and William H. Stanley and his children for the annual payment to him of six per cent on $55,000, or for any payment of any other amount than the annual income actually realized on the $50,000 trust fund, as provided in the will, and all court decisions and orders, purporting to approve any such agreements or substituted schemes, or the making of any payments thereunder otherwise than in accordance with the provisions in the will, were unauthorized and were beyond the power of either the parties or the court to authorize. Therefore, the orders from which these appeals have been taken must be reversed, with directions to proceed without further delay with the administration of the estate and the trusts created by the will, in accordance with the expressed intention of the testator in the respects stated above.

*By the Court.*—The orders dated February 5, February 27, and March 16, 1936, are reversed, and the record is remanded to the county court for further proceedings in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on January 12, 1937.