**FRANK MACHOVER, Plaintiff**

**v.**

**THE ESTATE OF LOLA MACHOVER, Defendant**

Civil No. 491/1992

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 26, 1992

FREDERICK G. WATTS, ESQ., *for plaintiff*

RICHARD H. HUNTER, ESQ., Christiansted, St. Croix, V.I., *for defendant*

CHRISTIAN, ALPHONSO A., *Senior Sitting Judge*

## OPINION AND ORDER

### I. INTRODUCTION

This matter is now before the Court for decision on two Motions of Estelle Machover Roth, copied here ad verbum, to wit:

1. "Motion to require Frank L. Machover to Deposit into the Registry of the Court Debt Owed to Estate of Lola Machover", dated June 19, 1992, and filed June 22, 1992; and

2. "Motion for Summary Judgment for Admission of Will to Probate and for Issuance of Letters Testamentary", dated July 17, 1992, and filed July 20, 1992.

Both Motions will be denied.

### II. HISTORICAL BACKGROUND

Lola Machover (hereafter "decedent") was the mother of Estelle Machover Roth (hereafter "Movant") and Frank L. Machover (hereafter "Respondent"). Decedent, the owner of an estate valued

in the millions, made five Wills dated March 26, 1979; September 2, 1981; April 8, 1982; September 24, 1985; and June 11, 1990, (hereafter "Will No. 1, No. 2, No. 3, No. 4, and No. 5, respectively).

In Will No. 1, decedent devised to Respondent Property No. 138b Commandant Gade, St. Thomas, Virgin Islands, and an equal undivided one-half interest in common in Parcels 70, 82, and 83 Estate Contant, No. 7A Southside Quarter, St. Thomas, Virgin Islands.

About two and a half years later, on August 14, 1981, after making her first Will on March 26, 1979, decedent delivered to Respondent two checks in the amounts of $190,000.00 and $60,000.00, as a loan, (See Exhibit A to Affidavit of Respondent dated July 25, 1992). Simultaneously, decedent signed a note written by Respondent which read:

> "If the loans I have given my son Frank Machover have not been repaid when I die the loans shall be cancelled, and the amounts shall be considered a gift from me to him".

And on August 28, 1981, she executed a Lease she refers to in her Will as "a lease on favorable terms to my real property" to Respondent.[1]

In Will No. 2, she revoked prior Wills and Codicils and stated in Paragraph 2: "I intentionally make no provision in this Will for my son, Frank Leonard Machover, since I have during my lifetime made what I regard as adequate provision for him".[2]

---

[1] An examination of this Lease indicates that the first Paragraph states that the Lease was executed on August 28, 1981; that the typewritten year of 1981 was changed in ink to 1982, but that the date appearing over the notary's seal is that the document was executed before the notary on August 28, 1981. Since the language appearing in Will No. 2, which was executed on September 2, 1981, is to the effect that the provision for the Respondent made to him by his mother took place prior to the execution of Will No. 2, which is dated September 2, 1981, the Court takes the position that this Lease was executed on August 28, 1981, according to the notarization, and not August 28, 1982, as changed in handwriting in the first Paragraph of the Lease.

[2] Section 7, Chapter 10, Title II of the 1921 Code of Laws of the Municipality of St. Thomas and St. John, provides: "If any person make his last will and die, leaving a child or children, or descendants of such child or children, in case of their death, not named or provided for in such will, although born after the making of such will or the death of the testator, every such testator, so far as shall regard such child or children, or their descendants not provided for, shall be deemed to die intestate and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator, real and per-

In Will No. 3, decedent provided in Paragraph 2 the following:

"Upon my death, the $250,000.00 loan I made to my son, Frank Leonard Machover, during my lifetime, or any part thereof then remaining unpaid, shall be cancelled. I intentionally make no other provision in this Will for my said son since I have during my lifetime made what I regard as adequate provision for him, including a 20-year lease on favorable terms to my real property designated No. 9A Dronningens Gade, Queens Quarter, Charlotte Amalie, St. Thomas, Virgin Islands, which I am hereafter leaving in trust for my grandaughters intending that the rent my son is to pay under said lease shall be for their benefit during the period said property is subject to said lease".

In Will No. 4, decedent provided in Paragraph 2 the following:

"Upon my death, the $250,000.00 loan I made to my son, Frank Leonard Machover, during my lifetime, or any part thereof then remaining unpaid, shall be cancelled. I intentionally make no other provision in this Will for my said son since I have during my lifetime made what I regard as adequate provision for him, including a 20-year lease on favorable terms to my real property designated No. 9A Dronningens Gade, Queens Quarter, Charlotte Amalie, St. Thomas, Virgin Islands".

In Will No. 5, decedent provided in Paragraph SECOND the following:

"Upon my death the $250,000.00 loan I made to my son, Frank Leonard Machover, during my lifetime, or any part thereof then remaining unpaid, shall be cancelled. I intentionally make no other provision in this will for my said son since I have during my lifetime made what I regard as adequate provision for him, including a 20-year lease on favorable terms to my real property designated No. 9A Dronningens Gade, Queens Quarter, Charlotte Amalie, St. Thomas, Virgin Islands".

sonal, as if he had died intestate, and the same shall be assigned to them; and all the other heirs, devisees, and legatees shall refund their proportional part". But in the current, applicable, Virgin Islands Code, which became effective September 1, 1957, and which, based on the date of death of decedent, applies to the instant case, no such (pretermission) clause appears. Therefore, decedent was not obligated to name and provide for either of her children if she intended to disinherit either of them.

11

Thus, in four Wills, executed in 1981, 1982, 1985, and 1990, not just in the last Will, the validity of which is under attack, decedent made the same provision as to the nature of her grant to Respondent.

Finally, in Will No. 5, decedent provided in Paragraph EIGHTH the following:

> "If my son, Frank Leonard Machover, in any manner, directly or indirectly, contests this will or any of its provisions, then the benefit which I have bestowed upon him by Article SECOND of this will shall be revoked and any part of the $250,000.00 loan which I made to my said son remaining unpaid at the time of the death shall be collectible by my estate".

In all five Wills, Richard E. Grunert, Esquire, a member of the Virgin Islands Bar in good standing, was decedent's attorney and also acted as one of the attesting witnesses. Attorney Grunert executed an Affidavit on July 23, 1992, to the effect that (a) he acted as such attorney and attesting witness; (b) with respect to "each of these five Wills, Lola Machover was in all respects competent to make the Wills and was not under restraint"; (c) that the contents of the Wills accurately reflected what decedent wanted and were not the result of any undue influence exerted upon her by any person; and (d) that while decedent in April 1990, travelled to Miami Beach, Florida, for the purpose of receiving medical treatment, she had always been a resident of St. Thomas from the time he knew her, 1962, and she never expressed any intent to change her domicile from the Virgin Islands to Florida.

In all five Wills, Movant is the greatest beneficiary, is the named personal representative, and when a Trust was created is also the named Trustee, authorized in both cases to serve without posting bond.

The only heirs at law, as distinguished from testamentary heirs, decedent died leaving, according to 15 V.I.C., Section 84, are her two children, the Movant and the Respondent herein.

Decedent died on December 24, 1991, in Miami Heart Institute, Miami Beach, Florida. On March 27, 1992, Movant filed in this Court her Petition for Admission of her Last Will and Testament to Probate and for Letters Testamentary with supporting documents, including proposed Citation for service on Respondent to bring him within the jurisdiction of the Court, pursuant to 5 V.I.C., App. IV, Rule 192(b), returnable on May 12, 1992, as Respondent failed or

refused to sign a Waiver and Consent pursuant to subdivision (a) of the Rule. The Citation was served on Respondent on April 9, 1992. On May 8, 1992, Respondent filed Declaration of Contest pursuant to Rule 193 id. (hereafter "Declaration"), predicated on the following: (a) probate proceedings had been initiated by Petition filed In the Probate Court of the Eleventh Circuit in and for Dade County,[3] this allegation although the probate proceeding in the Virgin Islands Court had been commenced 42 days before the commencement of the proceeding in the Florida Court; (b) there is pending in the Florida Court "a tort action filed by Frank Machover alleging that his sister, Estelle Machover Roth, tortiously interfered with Lola Machover's fixed intention to provide Frank Machover with one-half of her estate, which Frank Machover reasonably expected; and (c) the fifth and last of the decedent's Wills was procured by the exertion of undue influence and duress by Movant on decedent.

On June 22, 1992, Movant timely filed her Answer to the Declaration and included therein certain Affirmative Defenses, and a Counterclaim, that the Court order Respondent to deposit in the Registry of the Court the $250,000.00 loaned by decedent to Respondent, it being a liquidated debt owed the estate; and secondly, that a current appraisal be made of the fair market value of rentals owed the estate by Respondent for occupancy and use of No. 9A Dronningens Gade, and that the rental amount found to be due on or prior to May 8, 1992, the date of filing the Declaration, also be deposited in the Registry of the Court. Respondent filed his Reply opposing aforesaid two Motions and Counterclaim. Therefore, the aforesaid two Motions are ripe for decision.

---

[3] This Petition was to administer the estate of decedent as if she died intestate. Clearly, this may entail not just proving the 1990, fifth Will, but all the five Wills executed by decedent to be null and void.

## III. DISCUSSION

### A. *Motion To Deposit $250,000.00 in the Registry of the Court, as a Liquidated Debt Owed Decedent's Estate*

Based on Paragraphs FIVE and EIGHT of the fifth Will made by decedent and the Will Contest proceeding filed by Respondent on May 8, 1992, Movant moved the Court, on June 19, 1992, to order that the loan(s) made by decedent to Respondent on August 14, 1981, in the total sum of $250,000 is, using the term appearing in the Will, "revoked"; the $250,000.00 is a liquidated debt owed the estate of decedent; and that this sum be deposited, forthwith, with interest accrued thereon from the date of filing the Will Contest proceeding (May 10, 1992), to the date of deposit, into the Registry of the Court.

Respondent countered, in opposition on July 9, 1992, that (a) the Motion requests the Court to prejudge the merits of the Will Contest prior to any hearing on the matter; (b) even if the Will is ruled to be valid, the Will by its terms does not purport to require the immediate payment of the funds into the Registry of the Court, but only provides that the sum is collectible by the estate; (c) if decedent's estate is to collect on the alleged debt, the law requires that it file a separate, additional, and independent action on the debt, treating it as a chose in action; (d) that there are now pending two actions in the Courts of the State of Florida disputing the validity of the Will, one in the Civil Division and the other in the Probate Division of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida; and (e) a related action seeking the cancellation and revocation of a certain trust and inter vivos gifts made by the decedent. Respondent contends that since all of these three actions—the contest of the validity of the Will, the Trust, and the inter vivos gifts—have a common ground, namely, they were all the result of the exertion of undue influence on decedent by Movant, and the in terrorem clause is a part of the contested Will, it manifestly would be premature at this juncture in the proceedings to grant the Motion, which calls for a final determination.

On September 16, 1992, Movant answered that Respondent's opposition can be considered to be threefold: First, that Movant is not entitled to be granted forthwith the Order sought from the Court for payment of the $250,000.00 into the Registry of the Court because this required the filing of an action for this specific purpose.

14

Movant contended that she did just that in Paragraphs 1 through 3 on Pages 3 and 4 and in the ad damnum clause of her Answer and Counterclaim dated June 19, 1992, to Respondent's Declaration of Contest (the Civil action).[4]

Second, that Movant could not prevail in her Motion because of the actions filed by Respondent and pending in the Florida Courts. Movant answered this contention by informing the Court that one of those three actions, the Will Contest action, Machover v. Roth, Case No. 92-10557-CA, was dismissed, and that the other two actions were filed approximately a month and a half after Respondent was served with the Petition filed in the Territorial Court of the Virgin Islands for admission of decedent's Will to probate, alleging that, after the exercise of reasonable diligence "[h]e was unaware of any valid unrevoked Wills or Codills of decedent". To this, Movant responded that Respondent's running to the Courts of Florida in response to the estate's bringing this probate action cannot preempt the authority of this Court to address the pending Motion.

■■ The third argument of Respondent to Movant's Motion to deposit the fund in the Registry of the Court, as perceived by Movant, is that it would be inappropriate for the Court to make such an Order until the merits of his undue influence claim have been resolved. To this, Movant responds that (a) bare allegations that a Will is the product of the exertion of undue influence on the maker cannot serve to allow the dissipation or waste of the assets of the estate or diminish the duty of the "nominated" Executrix to collect those assets; that since the Order sought by the estate is not for the ultimate final distribution of the funds but only for their safekeeping during the pendency of the action, the Motion is appropriate. Citing as her authority 15 V.I.C. Section 311, she contends that an executor as personal representative of a decedent's estate is entitled, indeed is duty-bound, to gather in and take possession of, and control and preserve, the assets of the estate, both real and personal, and, pursuant to Section 240(b) id. may be removed from

---

[4] Pursuant to 5 V.I.C., App. IV, Rule 193, "[t]he contest shall be placed on the calendar and shall come on for hearing in the same manner as a civil action". (Added December 17, 1976). Pursuant to this provision, whenever a Declaration of Contest was filed, the Court has followed the practice of dealing with it as a separate civil case, although ancillary to the present, pending probate proceeding, so that all the due process procedural advantages to which the parties are legally entitled would be available to them.

15

office for dereliction in the faithful performance of this duty. Movant makes this contention although the Will on which her authority is based is under attack, has not yet been admitted to probate, and therefore she has not yet been granted her Letters Testamentary. She further contends that the Court can take care of this deficiency by appointing her Special Administrator by virtue of 15 V.I.C., Section 238, which would vest her with the authority to include this $250,000.00 as an asset of the estate, which she has the authority and duty to collect as any other asset of decedent's estate. The Court is of the opinion that this Section does not apply to assets, the ownership of which is in dispute.

Finally, Respondent would not be silenced. He responded that, yes, the Florida Court did dismiss the Will Contest action filed there, but gave Plaintiff twenty (20) days from July 17, 1992, to file an Amended Complaint, and this pleading will be filed within the time granted by the Court.

Secondly, in his words "there is an important additional reason why the Motion to deposit must be denied. The loan of $250,000.00 was in fact a gift and not recoverable by the estate even if the Will was admitted to probate". This argument is predicated on the fact presented by Affidavit of the Respondent, dated October 7, 1992, which he asserts was not pleaded prior to this time, as he was in Europe at the time Movant's attorney filed the Motion, which fact has not been controverted by Movant, that decedent "explicitly forgave the debt at the very time the 'loan' was made" in the following language:

> "If the loans I have given my son Frank Machover have not been repaid when I die, the loans shall be cancelled, and the amounts shall be considered a gift from me to him.
>
> *Signed*:
> /S/ Lola Machover
> August 14, 1981".

None of the pleadings, Affidavits, arguments or representations made to the Court on this Motion controvert in any way the genuineness of the signature of the decedent in any of the five Wills executed by decedent or in the writing forgiving the debt to the extent that the loans were not repaid as of the moment of death of the decedent, albeit the validity of the Last Will and Testament is contested on other grounds. If in fact the document purporting to forgive the unpaid part of the two loans is a valid document, then

16

as of the date of death of the decedent there existed no debt or loans to be repaid by Respondent.

■ The Court has examined very carefully the signature appearing on all five Wills made by decedent and compared the signature on the document forgiving the debt with these signatures, and we find that all these signatures were made by decedent; that therefore the document forgiving the amount of the two loans remaining unpaid as of the date of death of decedent is a valid document; and, consequently, as of the moment of death of decedent there existed no debt or loans owed by Respondent to be repaid to the estate.

■ True, as of the date of death of decedent, the Will, if proven upon trial of the contest to be valid, also would become a valid document, containing the in terrorem clause. However, since there was no debt or loans still extant, it is the Court's position, and we hold, that, assuming in terrorem clauses are declared to be valid in this jurisdiction, based on the particular fact situation of this case, to the extent that Paragraphs SECOND and EIGHTH of the Will attempt to resurrect and reactivate any portion of the loans totalling the $250,000.00, these provisions of the Will are a nullity.

■ Moreover, since it is clear that both the document forgiving the debt and the in terrorem clause in the Will create a clear conflict or at least an ambiguity, and since Respondent was not a party to creating this problem, both documents having been written by the decedent, the problem should not be resolved so as to operate to the prejudice of Respondent, but against the party who created it, the decedent, and consequently her estate. Peter Etu v. Fairleigh Dickinson University West Indies Laboratory, Inc., 22 V.I. 280, 289 (1986). VITEX Manufacturing Company, Ltd. v. The Government of the Virgin Islands, 5 V.I. 429, 435 (1965).

■ It is also clear that a decision to the effect that the Will revives any portion of the loans remaining unpaid at decedent's death, so that the same can be declared lost to Respondent by virtue of the operation of the in terrorem clause, would amount to a forfeiture. Forfeitures are no favorite of the law. They are enforced only when they are clearly provided for and are within both the letter and spirit of the law. U.S. v. One Ford Coach, 307 U.S. 219, 226 (1938). We find it difficult to hold that in the fact situation of this

17

case, assuming both the forgiving document and the Will are already in place, that the forfeiture is provided for unambiguously, where one document provides no debt survives decedent's death and another document provides, if it is proved to be valid, there is a debt to be paid to which an in terrorem clause should apply.

■■ This brings us to the validity of in terrorem clauses in this jurisdiction, assuming the debt is not forgiven. Our research has failed to unearth any written law or case law in this jurisdiction on this subject. When that is the case, we must follow the rules of the common law as expressed in the Restatements of the Law approved by the American Law Institute, and to the extent not so expressed as generally understood and applied in the United States. 1 V.I.C., Section 4.

Restatements, Second, Property (Donative Transfers) Chapter Nine, Section 9.1 (May 19, 1981), deals with this subject in a detailed analysis. The position taken by this Restatement, that a no-contest condition is unenforceable against one who, in good faith and with probable cause, contests a Will or other donative transfer on any ground, is the law in the majority of American jurisdictions. The Uniform Probate Code, Section 3-905, which has been enacted in many States, has also taken this approach, although statutes in Florida and Indiana declare all such clauses invalid per se.[5]

Most jurisdictions have adopted a probable cause rule, effective regardless of the cause or reason for the contest, e.g., South Norwalk Trust Co. v. St. John, 92 Conn. 168, 101 A. 961 (1917) (state interest in ascertaining validity of will invalidates no-contest condition where probable cause shown); Wells v. Menn, 158 Fla. 228, 28 So.2d 881, 169 A.L.R. 892 (1946) (probable cause rule extends to contest on ground of undue influence); In re Cocklin's Estate, 236 Iowa 98, 17 N.W.2d 129, 157 A.L.R. 584 (1945) (adopting majority rule); In re Estate of Hartz v. Cade, 247 Minn. 362, 77 N.W.2d 169 (1956) (adopting majority rule; acknowledging state policy against "thwarting the course of justice" by deterring establishment of invalidity of instruments offered for probate); Matter of Estate of Seymour, 93 N.M. 328, 600 P.2d 274 (1979) (adopting probable cause rule; transferee had probable cause given "unresolved legal questions". Id. at 332, 600 P.2d at 278); Ryan v. Wachovia Bank &

---

[5] This may explain the rush of Respondent to move the forum for resolution of the issue to Florida.

Trust Co., 235 N.C. 585, 70 S.E.2d 853 (1952) (probable cause and good faith for contest on any ground invalidates no-contest provision; courts should be as accessible to persons contesting wills as to persons seeking construction); cf. Whitehurst v. Gotwalt, 189 N.C. 577, 127 S.E. 582 (1925) (condition enforceable against contestant who lacked probable cause); Wadsworth v. Brigham, 125 Or. 428, 259 P. 299 (1927) reaffirmed in Wadsworth v. Brigham, 125 Or. 428, 266 P. 875 (1928) (good faith for contest sufficient to invalidate condition).

This majority rule would apply even if contestant was unsuccessful in his challenge. In re Friend's Estate, 209 Pa. 442, 58 A. 853 (1904) (probable cause for contest on any ground invalidates condition regardless whether contest succeeds; Tate v. Camp, 147 Tenn. 137, 245 S.W. 839, 26 A.L.R. 755 (1922) (probable cause invalidates condition; if testator were insane or unduly influenced, document would not be testator's will, and testator's intentions would not be defeated by finding of invalidity); Dutterer v. Logan, 103 W. Va. 216, 137 S.E. 1, 52 A.L.R. 83 (1927) (probable cause invalidates no-contest condition); In re Keenan's Will, 188 Wis. 163, 205 N.W. 1001, 42 A.L.R. 836 (1925) (controvenes state policy to require litigant to forfeit, where challenge fails, if probable cause existed. See 6 American Law of Property Section 27.6 (A.J. Casner ed. 1952).

The majority rule is succinctly stated by the Texas Court of Civil Appeals as follows: "[t]he great weight of authority sustains the rule that a forfeiture of rights under the terms of a Will will not be enforced where the contest of the will was made in good faith and upon probable cause". Calvery v. Calvery, 122 Tex. 204, 212, 55 S.W.2d 527, 530 (Tex. Civ. App. 1932). See also First Methodist Episcopal Church South v. Anderson, 110 S.W. 2d 1177 (Tex. Civ. App. 1937).

There are also courts that apply the probable cause rule only on certain conditions, e.g., to cases where contestants allege either forgery or revocation by subsequent document, holding that such cases are not "contests, that the challenger is actually seeking to ascertain the true intent of the testator as expressed in a properly executed, unrevoked will. In re Estate of Lewy, 39 Ca. App. 3rd 729, 113 Cal. Rptr. 674 (1974) (probable cause for challenger of allegedly altered will, no-contest condition invalid). In re Bergland's Estate, 180 Cal. 629, 182 P. 277, 5 A.L.R. 1363 (1919).

There is also judicial support for the validity of no-contest provisions regardless whether or not there was probable cause to con-

test. The following policy considerations for this position are articulated in an early Alabama case as follows:

"(1) The testator has a right to dispose of his property as he desires, so long as he violates no positive law or established public policy; (2) will contests tend to divide the family and cause disclosure of family secrets; (3) upholding no-contest provisions tend to discourage litigation, a result favored by public policy; and (4) prevention of dissipation of his estate through unnecessary litigation is a legitimate goal of a testator. Donegan v. Wade, 70 Ala. 501 (1881). See Lytle v. Zebold, 235 Ark. 17, 357 S.W.2d 20 (1962) ("Since the testator may leave his property to anyone he chooses he is at liberty to exclude from his bounty those beneficiaries who unsuccessfully seek to thwart his testamentary wishes". Id. at 18–19, 357 S.W.2d at 21); Elder v. Elder, 84 R.I. 13, 120 A.2d 815 (1956) ("[W]here there is no statute to the contrary and where the condition affixed to a testamentary gift violates no established rule of law or public policy", condition is valid)".

This is the minority rule.

■■ Since we must adopt the majority rule, that no-contest provisions are void if the contest is motivated by probable cause, and if probable cause for the contest did exist, the contestant would not forfeit his grant under the Will, the validity of which is contested, indeed even if he were unsuccessful at trial on the merits, it becomes imperative for us to state what amounts to probable cause. We quote subsection (j), entitled Existence of Probable Cause, of Section 9.1 of Chapter 9, Donative Transfers (Property Second) Pt. IV of the Restatements:

"As used in this Restatement, the term 'probate cause' means the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful. The evidence needed to establish probable cause should be less where there is strong public policy supporting the legal ground of the contest or attack. Thus, less evidence should normally be necessary to support a probable cause determination where the ground of contest or attack is forgery of the testator's signature or his subsequent revocation of the will than would be neces-

sary to support such a determination under a mortmain statute. A factor which bears on the existence of probable cause is that the beneficiary relied upon the advice of disinterested counsel sought in good faith after a full disclosure of the facts. Where a statute makes it a crime to fail to come forward with a document that appears to be the will of a decedent, a person will not forfeit a gift under a non-contest provision in another will if the will that person comes forward with is denied probate, so that the will containing the no-contest provision remains valid".

 We therefore conclude:

1. That the Motion to forthwith deposit the $250,000.00 in the Registry of the Court is denied for the reason that the decedent converted the loans to a gift at the moment of her death;

2. That even if the loans were not so converted so that there remained a gift to be forfeited by virtue of the application of the in terrorem clause, a precondition of the application of this clause is a finding that the Will Contest proceeding was commenced in bad faith and without probable cause, and since no such finding has been made, which clearly calls for a hearing or trial, the Motion must be denied.

B. *Motion for Summary Judgment for Admission of Will to Probate and for Issuance of Letters Testamentary to Executrix Named in the Will (Movant)*

 Since this Motion is that Judgment be granted to Movant summarily to the effect that decedent's Will was not executed as a result of the exertion by Movant on decedent of undue influence, and since as a preliminary matter the Court must find that Respondent's contesting of the Will was not made in good faith and with probable cause, it should be obvious that these are material issues of fact which must be tried, and that therefore granting the Motion would be most inappropriate. FRCP 56; 5 V.I.C., App. I, Rule 56.

The Motion is denied.

21

## SUPPLEMENT TO OPINION AND ORDER DATED OCTOBER 26, 1992

The purpose of this writing is to address directly the questions of jurisdiction and the date the Court fixes for the trial of the factual issues arising from the proceedings as they appear on the record thus far.

The question of jurisdiction of this Court to determine the validity of the Will called into question by the filing of the Will Contest pursuant to 5 V.I.C., App. IV, Rule 93, was not directly decided in our aforesaid Opinion and Order for the reason it was not directly raised and argued by the parties.

Frank Machover, (hereafter "Respondent"), appears to raise this question for the first time in his Opposition to Motion for Summary Judgment filed by Estelle Machover Roth, (hereafter "Movant"), in Paragraph 3 thereof in the following language:

> "This is not the correct forum to resolve questions concerning Lola Machover's residency or the validity of her will. Three actions are pending in Florida, as set forth in Frank Machover's affidavit. Lola Machover's will is before the Probate Court in Dade County, Florida, which must and will determine both the residency of Mrs. Machover and the validity of her will. Also pending before the Florida Probate Court is a petition alleging that Mrs. Machover's will is invalid as the result of undue influence—precisely the same claim before this Court. (Mrs. Machover was living in Florida at the time of her death; she executed her will in Florida; and she died in Florida."

The fact that Respondent filed any number of actions in another jurisdiction is not the determining factor as to whether this Court has jurisdiction to decide whether any Will is valid and may be admitted to probate in the Courts of the United States Virgin Islands. The laws of the United States Virgin Islands determine these questions.

15 V.I.C., Section 161, entitled "Jurisdiction of District Court", provides In pertinent part:

> "In addition to the jurisdiction and powers conferred upon it by other provisions of law, the district court has jurisdiction and the power to administer justice in all matters relating to

22

the affairs of decedents, and, upon the return of any process, to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by citation, as to any and all matters necessary to be determined in order to make a full, equitable, and complete disposition of the matter by such order or decree as justice requires; and, in the cases and in the manner prescribed by law, and in addition to and without limitation or restriction on the foregoing powers, to:

(1) take proof of wills;

(2) grant and revoke letters testamentary, and of administration".

■ By Section 76 of Act No. 3876, enacted September 9, 1976, effective January 1, 1977, the territorial court was granted original jurisdiction concurrent with that of the district court "to supervise and administer estates and fiduciary relations and to appoint and supervise guardians and trustees".

Section 231 id., entitled "Proof of Wills", provides in pertinent part:

"Proof of a will shall be taken:

(1) when the testator, at or immediately before his death, was an inhabitant of the Virgin Islands and leaves assets therein;

(3) when the testator, not being an inhabitant of the Virgin Islands, shall have died out of the Virgin Islands, leaving assets in the Virgin Islands".

It is not disputed that the Testatrix, at least immediately before her death, was an inhabitant of the Virgin Islands; or, if the Testatrix was not an inhabitant of the Virgin Islands at the time of death, that she died out of the Virgin Islands leaving assets therein.

Section 16 id. entitled "Wills which may be proved", provides that the following wills may be admitted to probate in the Virgin Islands:

"(1) A will of real or personal property, executed as prescribed by the laws of the Virgin Islands;

(2) a will of real or personal property, executed without the Virgin Islands in the mode prescribed by the law of the

place where executed, provided such will is in writing and subscribed by the testator; and

(3) a will of real or personal property, executed without the Virgin Islands in the mode prescribed by the law of the testator's domicile, provided such will is in writing and subscribed by the testator".

 An examination of the Will under attack in this action and of both the law of the place where executed and the law of the Virgin Islands, 15 V.I.C., Sections 2 and 13, will establish beyond doubt, and we hold, that the Will of the decedent meets and fulfills all the requisite legal criteria and therefore may be proved in this jurisdiction; that this Court has jurisdiction to determine whether the proffered Will is valid; and, if so, to admit it to probate. We further hold that the subsequent petitioning of the Court of any other jurisdiction to grant Letters of Administration of the decedent's estate as if she died without leaving a valid Will does not preempt or deprive this Court of its jurisdiction.[1]

According due consideration to local statute and case law, we find it difficult to understand why Respondent has laid so much emphasis, or any emphasis at all for that matter, on the question of residency of decedent at the time of her death. 15 V.I.C., Section 38 provides in pertinent part:

"The validity and effect of a testamentary disposition of real property, situated within the Virgin Islands, or of an interest in real property so situated which would descend to the heir of an intestate, and the manner in which such property or such an interest descends, where it is not disposed of by will, are regulated by the laws of the Virgin Islands, without regard to the residence of the decedent". [Underscoring ours].

True, this Section also provides:

"Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other

---

[1] Petition to admit to probate decedent's Will, dated June 11, 1990, was filed by Movant in the Territorial Court of the Virgin Islands on March 27, 1992. On May 8, 1992, Respondent filed in this Court Declaration of Contest. Respondent also filed in the Probate and Civil Divisions of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, actions contesting the validity of decedent's Will dated June 11, 1990, and to administer the estate of decedent as if she died intestate.

property [obviously personalty] situated within the territory, and the ownership and disposition of such property; where it is not disposed of by will are regulated by the laws of the State or Country of which the decedent was a resident at the time of his death", this property in accordance with the age-old doctrine, "personalia personam sequintur", personal things follow the person, as opposed to the doctrine expressed in the words "lex situs" or "lex loci rei sitae", the law of the place where the property is situated, it being the general rule that lands and other immovables are governed by the law of the Country in which they are situated". Westl. Priv. Int. Law, 62. See also Estate of Georg (D.C.V.I. 1909) 7 V.I. 298, 298 F.Supp. 714.

■■■ Because of this provision, at sometime in the progress of this litigation, it may become necessary to determine the residency of the decedent at the time of death, but it does not appear to the Court that time has as yet arrived. The applicable legal principle is not to decide questions which have not clearly arisen.

It now remains only for the Court, in cooperation with Counsel, to order how much more time, if any, should be allowed Counsel to complete discovery; to identify the issues to be tried in the Will Contest issue; and to schedule the time for trial on the merits. To achieve these ends to the mutual satisfaction of the Court and the parties, the Court hereby schedules a pretrial conference to be held on November 17, 1992, at 1:00 p.m.