# IN THE MATTER OF THE ESTATE OF BENJAMIN EZEKIEL WALTERS, Deceased

Probate No. 104/94

Territorial Court of the Virgin Islands

Div. of St. Croix

April 11, 1997

14

RoLAND B. SCOTT, Esq., San Dia Park, NM, *for the Estate*

LoLITA DE PAIEWONSKY, Esq., Christiansted, U.S.V.I. *for the Heirs*

STEELE, *Judge*

## MEMORANDUM OPINION

Vincent and Rodeny Walters petition this Court to invalidate their father's will and for distribution of his estate under the Virgin Islands intestacy laws. Petitioners argue that either the Virgin Islands Pretermitted Child Statute, 15 V.I.C. Sec. 18, or the Uniform Simultaneous Death Act, 15 V.I.C. Sec. 88, invalidates testator's will, thus subjecting testator's estate to intestacy. The issue here is twofold: First, whether testator's will is valid; and second, whether the aforementioned Virgin Islands statutes have any revocatory or interpretive effect upon testator's will.

## FACTS

The facts of this case are simple, and substantially undisputed.

Testator, Benjamin Ezekiel Walters and Iona V. Walters, his wife, met their deaths in a tragic house fire, on June 25, 1994. Apparently, the couple died of asphyxia and extensive bodily burns in the second, third, and fourth degree. However, Mrs. Walters' body also exhibited multiple deep lacerations of the head, skull fractures, brain damage and hemorrhage; ostensibly, as a result of physical blows inflicted by testator. Testator's body displayed no similar physical mutilations other than those associated with a fire death.

The couple's death certificates point only to simultaneous demise, and contrary evidence of survivorship by either of the couple was never provided by the litigants.

Prior to his death, some nine years ago on April 22, 1986, testator executed a will devising his entire estate to his wife, and appointing her executor. Testator, mindful of the possibility that his wife may predecease him, named his step-son, Oclan Fraser, the natural son of Mrs. Walters, as an alternative devisee. The will also named one Vincent Pinney as the replacement executor. Testator's will provides in relevant portions:

> Article 2: I hereby give and devise all my estate, both real and personal of which I may possess upon my death, including all property acquired by me or to which I may become entitled after the execution of this will, to my wife, Iona V. Walters, of Plot No. 34A Hannah's Rest, Frederiksted, St. Croix, U.S. Virgin Islands.

> Article 3: In the event that the above named beneficiary [wife Iona V. Walters] should predecease me, her share shall descend to her son, Oclan Fraser. . . .

On October 28, 1994, Mr. Oclan Fraser filed petition to admit testator's will to probate, naming Mr. Pinney as executor. The petition listed few assets in the estate: a $134.00 savings account, and a parcel of land upon which the marital homestead is built. The land is assessed at $8,460.00 for tax purposes, and the marital homestead is assessed at $23,389. However, because the homestead was destroyed in the same fire that ended the couple's life, the actual value remains unknown, as no new valuations were submitted to this Court indicating a new value reflective of the property's destroyed condition.

As the contingent beneficiary, under article 3 of testator's will, Fraser stood to inherit the entire estate. Testator's two natural children, hereinafter "petitioners," objected to Fraser's petition to admit testator's will to probate, and to appoint Vincent Penny as executor. Petitioners impugn the validity of testator's will on two grounds. First, petitioners argue that testator's failure to expressly disinherit petitioners from the will rendered the will invalid under 15 V.I.C. Sec. 18. Second, petitioners argue that the Uniform

Simultaneous Death Act invalidates testator's will. Finally, petitioners implicitly raise undue influence, and possibly duress, by the deceased beneficiary as further grounds for invalidating the will. By challenging the validity of the will, petitioners seek to place testator's estate under the Virgin Islands intestacy laws, which would allow petitioners a share of the estate. Naturally, Mr. Fraser objected, reaffirming the validity of testator's will and his entitlement as a contingent beneficiary to testator's entire estate.

## DISCUSSION

The first issue presented to this court is whether testator's omission of his natural children, without specific testamentary language to that effect, invalidates testator's otherwise valid will, under 15 V.I.C. Sec. 18. The second issue is whether the simultaneous demise of the beneficiary spouse and the testator effectuates a different disposition of testator's estate than that of testator's will, under the Uniform Simultaneous Death Act, 15 V.I.C. Sec. 88. We first address the issue of whether the will is valid. We then examine whether 15 V.I.C. Sec. 88 provides for any revocative or interpretive influence upon testator's will.

### A. The Validity of Testator's Will

 Under the Virgin Islands probate code, a will is valid if it meets the testamentary formalities set out in 15 V.I.C. § 13. Failure to abide by these formalities renders a will invalid. *See Estate of Georg,* 7 V.I. 298, 298 F. Supp. 741 (D.C.V.I. 1969). Notwithstanding the foregoing codified testamentary formalities, a will may be entirely revoked in two ways: Revocation by Physical Act and Revocation by a Subsequent Writing.[1] 15 V.I.C. § 26. Aside from

---

[1] Revocation by Physical Act & Revocation by Subsequent Writing. Although not necessary for the disposition of this case, we find it worthwhile to briefly note Revocation of a will by Physical Act or by Subsequent Writing. The foregoing types of revocations are governed by 15 V.I.C. § 26, which holds that a will could be revoked in two instances. First, where there is another will or codicil, executed with all the testamentary formalities of 15 V.I.C. § 13, that is inconsistent with the testamentary language of the original will. Second, where testator burns, tears, cancels (presumably by writing it on the will), obliterating or destroying with the intent of denying the testamentary effect of such will. The physical act may be done by a third person subject to testator's direction and consent, and proof by two witnesses.

17

complete revocation, the Virgin Islands probate code also provides for the partial revocation of a will, under limited circumstances, for the limited purpose of re-interpreting such wills for the benefit of a perceived public goal. One such type of partial revocation occurs under the Pretermitted Child Statute, 15 V.I.C. § 18. The purpose behind such statute is to protect children inadvertently omitted from a will executed prior to their birth. Further, the spirit of this statute comprehends the prevention of unintentional disinheritance of children. Mindful of the express language and utility of 15 V.I.C. Sec. 18, we turn our attention to its application, if any, upon the instant case.

*1. The Pretermitted Child Statute*

In the Virgin Islands, the Pretermitted Child Statute is codified under 15 V.I.C. Sec. 18, which provides in part:

> (a) Whenever a *testator shall have a child born after the making of a last will*, . . . and shall die leaving such child, . . ., unprovided for by any settlement, . . ., nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent *had died intestate*, and shall be entitled to recover the same portion from the devises and legatees, in proportion to and out of the parts devised and bequeathed to them by such will.

15 V.I.C. Sec. 18(a) (emphasis supplied).

The predecessor statute to 15 VI.C. Sec. 18 was Title II, chapter 10 Sec. 7 of the 1921 Code, which statutory language provides in pertinent part:

> "If any person make his last will and die, leaving a child or children. . . not named or provied for in such will, although born after the making of such will or the death of the testator, every such testator, so far as shall regard such child orchildren, . . . not provided for, shall be deemed to die intestate and such child or children, . . . shall be entitled to such proportion of the estate of the

18

testator, real and personal, *as if he had died intestate,* and the same shall be assigned to them; and all the other heirs, devises, and legatees shall refund their proportional part."

1921 Code, Title II, Chapter 10, § 7 (emphasis supplied).

■ In 1951, by enacting 15 V.I.C. Sec. 18, the legislature rendered defunct its predecessor section 7, chapter 10, Title II of the 1921 Code. Compared to its predecessor, 15 V.I.C. Sec. 18 is narrow in application, reserved only to omitted children born after the execution of a will. Furthermore, 15 V.I.C. Sec. 18 no longer requires that a testator expressly disinherit children born before the execution of a will for effective disinheritance. *Machover. v. Estate of Machover,* 28 V.I. 7 (Terr. Ct. 1992).

From the outset, we expediently conclude, based on its express language, that 15 V.I.C. Sec. 18 has no application, and thus partial revocatory effect, upon testator's will in the instant case as petitioners are not children born after the testator executed his will. Rather, they are testator's adult children from a previous marriage, born long before April 22, 1986, the date of execution of testator's will. However, petitioners argue that 15 V.I.C. Sec. 18 is applicable because it is a mere refined version of the repealed section 7, Chapter 10, Title II of the 1921 Code, which statutory language encompassed both children born before and after the execution of the will. Such argument startles this Court with the seemingly undying spirit of Section 7 of Title II of the 1921 Code, which petitioners submit remains in latent awake in the language of 15 V.I.C. Sec. 18.

The tenor of petitioners argument proceeds with the contention that the utility of Section 7, chapter 10, Title II of the 1921 Code remains ever present as the intent of the legislature was not to completely repeal section 7 of the 1921 code, but to implicitly keep it effective by the enactment of 15 V.I.C. Sec. 18. In effect, petitioners essay to have us resurrect a section of the old 1921 Code that the Virgin Islands legislature found appropriate to place in a legislative grave. The Court's essential function is to breath life and meaning to statutes, not to resurrect or create them, a function reserved solely for the legislature. We hold that petitioners' argu-

19

ment is as lifeless as the very repealed statute in which they rely upon for the following two rationales.

First, we must note, petitioners' argument confuses the law regarding invalidation or revocation of wills with the law regarding construction of wills. Even if we were, by strain of the legal imagination, to accept petitioners' argument that Section 7, Chapter 10, Title II of 1921 Code still remains in effect, it still would not render testator's will invalid. The foregoing section of the 1921 code was a will construction statute, not a will invalidating statute. As previously mentioned, the only statute in the Virgin Islands probate code that contemplates absolute revocation of wills is 15 V.I.C. Sec. 26.

Apparently, back in 1921, the legislature found it sound public policy to provide for pretermitted children, whether born before or after the execution of a will. However, the legislature in 1951 revisited section 7, and thought it appropriate to narrow its language, reserving it only to children born after the execution of a will, as is currently reflected by the express language of 15 V.I.C. Sec. 18. The legislative intent underlying 15 V.I.C. Sec.18 is apparent. A testator who has children born before making the will has ample time to decide whether any property should be devised to such children. However, a child born after the execution of a will, whether before or after the death of testator, and not included in the will, could reasonably be presumed to have been inadvertently disinherited, a result that may attend hardship upon such child. Henceforth, the language of 15 V.I.C. Sec. 18 was drafted with specificity and conciseness to cover only children born after the execution of a will.

Second, the express language of 15 V.I.C. Sec. 18 does not contemplate absolute revocation even where the will omits a child born after its execution. No where in the statute is there language effectuating absolute revocation. The limited purpose of 15 V.I.C. Sec. 18 is to partially revoke dispositions made to the devises and legatees, according to their proportionate shares, to the extent of the omitted child's intestate share as if the testator died intestate. The specific inclusion of such terms as "devises" and "legatees" in 15 V.I.C. Sec. 18, and even in its predecessor statute in the 1921 Code, evinces that the legislature never intended for the Virgin

20

Islands pretermission child statute to bring about an absolute revocation of a will, and thus completely subvert the testator's intent. Thus, 15 V.I.C. Sec. 18 is designed for the limited purpose of re-interpreting an otherwise valid will to the extent the will reflects the intestate share of a pretermitted child, who presumably was inadvertently left out of the will. *See Machoever v. Estate of Machover*, 28 V.I. 7 (Terr. Ct. 1992).

■ Mindful of the foregoing analysis, we reject petitioners' argument that 15 V.I.C. Sec. 18 is a will invalidating statute. We find that 15 V.I.C. Sec. 26, Revocation and Cancellation of Written Wills, is the only code section that deals with complete revocation of wills. In sum, petitioners' argument espousing the invalidation of testator's will, based on the statutory language of 15 V.I.C. Sec.18, is without merit and contrary to the Virgin Islands probate code.

### 2. Undue Influence: Testator's Mental Capacity

Petitioners, in their affidavits, allege testator's stressful life with the beneficiary, Ms. Walters. In the spirit of comprehensiveness, we find it opportune to discuss the law of undue influence, and its invalidating influence, if any, upon testator's will. As the Virgin Islands probate code is modeled closely after New York's Estate, Powers, and Trusts Law, we find that jurisdiction's case law informative in our discussion of undue influence, and its application to the instant case.

21

■ "Undue influence[2] suggests the presence of a testamentary capacity subjected to and controlled by a dominant influence or power that subverts the intent of the testator, rendering the testator unable to execute a testamentary instrument that does manifest his will, but rather the will of the party exerting the influence." *In re Kaufman*, 5 NY2d 825 (N.Y. 1965). To demonstrate undue influence, the contestant must prove three legal and factual elements. First, the existence and exertion of an influence; second, the effective operation of such influence as to subvert or overpower the mind of the testator at the time of execution of a will; third, the execution of a will that would not have been executed but for such influence. Finally, influence is undue only where the free agency of the testator was destroyed and a testament is produced that expresses the will of the one exerting the influence, rather than the will of the testator. *Estate of Tracy*, 195 A.D.2d 469 (N.Y. 1993); *Matter of Fiumara*, 47 NY2d 845 N.Y. 1979).

Petitioners assert possible mistreatment by Mrs. Walters of the testator in their affidavits. These affidavits aver that testator "appeared to be distressed or under a lot of stress." Even if taken as true, such allegations still do not amount to undue influence, as mere allegations of stressful life are not indicative of undue influence. As stated above, undue influence requires coercion, power and influence of such magnitude as to overpower testator's

---

[2] The concept of undue influence dates as far back as the 18th Century; capturing its meaning, however, was not easy. Lord Justice Hannen of England, in the 1885 case of *Wingrove v. Wingrove*, 11 Prob. Div. 81, nevertheless, sheds an informative perspective on what constitutes undue influence when he wrote:

"A man may be the companion of another, and may encourage him in evil courses, and so obtain what is called an undue influence over him, and the consequence may be a will made in his favour. But that again, shocking as it is, perhaps even worse than the other, will not amount to undue influence.

"To be undue influence in the eye of the law there must be — to sum it up in a word — *coercion*. . . . It is only when the will of the person who becomes a testator is coerced into doing that which he or she does not desire to do, that it is undue influence. The coercion may of course be of different kinds, it may be in the grossest form, such as actual confinement or violence, or a person in the last days or hours of life may have become so weak and feeble that a very little pressure will be sufficient to bring about the desired result, and it may even be, that the mere talking to him at that stage of illness and pressing something upon him may so fatigue the brain, that the sick person may be induced, for quiteness' sake, to do anything. This would equally be coercion, though not actual violence." *Id.* (Emphasis supplied)

intent. We hold, without more, that the submitted affidavits, by themselves, fail to evince undue influence that would undermine testator's mental capacity at the time of execution of his will.

## B. The Uniform Simultaneous Death Act

We now turn our attention to petitioner's second argument involving the Uniform Simultaneous Death Act, ("USDA"), codified under 15 V.I.C. Sec. 88, which petitioners argue invalidates testator's will. Because the USDA is an issue of first impression in this jurisdiction, we shall, with the bolts and nuts of discussion and interpretive analysis, fasten this new area of law to the boards of judicial precedents.

At the outset, we note that petitioners misconceive the application and relevance of the USDA to the instant facts. Further, petitioners' two paragraph discussion of the USDA is broadly sweeping, and equivocal in nature, especially considering that petitioner adduce the USDA to persuade this Court to invalidate testator's will.

### 1. Historical Background

■ ■ Prior to the enactment of the USDA, common law provided no presumption of either survivorship or simultaneous death. The lack of such presumption required that the burden of proof fall on whoever was attempting to establish the order of death. *Schweizer v. Schweizer*, 638 P.2d 378, 379 (Kan. Ct. App. 1981). To deal with this problem, the USDA was drafted by the National Conference of Commissioners on Uniform State Laws, which the Virgin Islands legislature adopted by enacting 15 V.I.C. Sec. 88. The essential function of the USDA is to provide for the devolution of property only where there is no sufficient evidence, that is, proof by a preponderance of evidence, that persons have died otherwise than simultaneously. *See e.g., In Re Moore's Will*, 178 NYS2d 1000 (N.Y. Surr. Ct. 1958); *Schmitt v. Pierce*, 344 SW2d 120 (Mo. 1961); *United Trust Co. v. Pyke*, 427 P.2d 67 (Kan. 1967); *see also* 8B U.L.A. Commissioners' Prefatory Note, p. 267 (1993). Since its adoption, the USDA has been applied to cases of simultaneous demise as in airplane crashes, asphyxiation, automobile accidents, and relevantly, homicide-suicide.

The USDA has been interpreted as a substantive rule that establishes "the sequence of death for the purpose of distribution." *In re Wedemeyer's Estate*, 240 P.2d 8 (Cal. 1952). The burden of proof regarding survivorship is on the party whose claim is dependent on survivorship. *Matter of Bausch's Estate*, 420 NYS2d 181 (NY Surr. Ct. 1979). Accordingly, the USDA effectively "supplant[ed] the former arbitrary and complicated presumptions of survivorship with effective, workable, and equitable rules applicable to the ever-increasing number of cases where two or more persons have died under such circumstances that there is no sufficient evidence to indicate that they have died otherwise than simultaneously." *In re Schmidt's Estate*, 261 Cal. App.2d 262, 67 Cal. Rptr 847 (Cal. Ct. App. 1968). Additionally, the USDA "discards the idea of proving survivorship and proceeds on the presumption that each person is the survivor as to the property allotted to him and administers the estate accordingly." *In re Estate of Sugino*, 267 Cal. App.2d 591 (Cal. Ct. App. 1968).

The Virgin Islands version of the Uniform Simultaneous Death Act, as codified under 15 V.I.C. Sec. 88, provides in pertinent part as follows:

> (a) Where the title to property or the devolution thereof depends upon priority of death and there is *no sufficient evidence* that the persons have died otherwise than *simultaneously,* the property of each person shall be disposed of as if he had survived, except as otherwise provided in this section.
>
> . . .
>
> (c) Where there is no sufficient evidence that two joint tenants or tenants by the entirety have died otherwise than simultaneously the property so held shall be distributed one-half as if one had survived and one-half as if the other survived . . . .

15 V.I.C. Sec. 88 (Emphasis supplied).

■ The term "sufficient evidence," as provided in the statute, is held to mean "that degree of certainty of evidence to establish priority of death or the fact of survivorship is merely a preponderance of the evidence, and need not arise to the degree of

24

certainty which would exclude every reasonable conclusion other than that reached by the trier of the facts." *In United Trust Co. v. Pyke*, 427 P.2d 67 (Kan. 1967). Further, "the ultimate fact [of survivorship] does not have to be established to a certainty or beyond a reasonable doubt, and that the evidence is sufficient if an inference can be drawn fairly and reasonably to the exclusion of all others." *In re Moore's Will*, 178 NYS2d 1000 (N.Y. Surr. Ct. 1958). Last but not least, the term "simultaneously," as used in the USDA, is held to mean "the same time", or in the "same instant." *See Thomas v. Anderson*, 215 P.2d 478 (Cal. Ct. App. 1950).

*2. Distribution of Testator's Estate*

a. 15 V.I.C. Sec. 88(a)

Drawing upon the above principles, and noting that no probative medical evidence was submitted demonstrating a result other than simultaneous death of the couple, we believe the USDA to be controlling in the instant case.

For purposes of disposing of testator's estate under 15 V.I.C. Sec. 88(a), testator's estate is administered as if he had survived Ms. Walters. Treating testator as the surviving spouse invalidates the disposition made in article 2. However, testator, cognizant of the possibility that he may not survive Ms. Walters, included article 3 in the will to devise his entire estate to Oclan Fraser. Treating Ms. Walters as having predeceased testator triggers the contingent article 3, thereby obtaining the result of testator's entire estate being devised according to the language of article 3, i.e., Oclan Fraser receiving the entire estate.

b. 15 V.I.C. Sec. 88(c)

Cognizant of the status of the marital homestead as a tenancy-by-the-entirety property, we find applicable 15 V.I.C. Sec. 88(c), which 'governs cases of intestate and testate successions, and those arising in joint tenancies and as between the insured and the beneficiary of life insurance policies. *In re Di Bella's Estate*, 125 NYS2d 755 N.Y. Surr. Ct. 1953); 15 V.I.C. Sec. 88(c); *see also Brundige v. Alexander*, 547 S.W.2d 232 (Tenn. 1976) (holding that where husband and wife perished together, the Uniform Simultaneous Death Act applied to property held by the entirety).

25

The mandate of 15 V.I.C. Sec. 88(c) is that half of testator's interest in the marital homestead devolve to his estate, while Ms. Walters' other half devolve to her estate. *See Burndige*, 547 S.W.2d at 232 (interpreting the USDA clause on disposition of assets owned in tenancy-by-the-entirety as passing one-half interest of the jointly owned property to the respective estates of the deceased spouses); *Adams v. Gardner*, 237 S.W.2d 495 (Mo. 1951). Here, the marital homestead was owned by testator and the beneficiary in tenancy-by-the-entirety. As the parties perished in unison, the marital homestead devolves in two half-shares, one-half to testator's estate, and one-half to Ms. Walters' estate. The utility of article 3 of testator's will is realized in this case as testator intended to devise his entire estate to his step-son, Oclan Fraser, if his wife predeceases him. Thus, the half-share of the marital homestead that passed to testator under 15 V.I.C. Sec. 88(c) is devised to the alternative devisee under article 3 of testator's will, Oclan Fraser. Accordingly, we conclude that the 15 V.I.C. Sec. 88(c), coupled with the reading of article 3 of the will, result in the complete devise of testator's estate to respondent, Oclan Fraser.

## CONCLUSION

Under the Virgin Islands probate code, the Pretermitted Child Statute, 15 V.I.C. § 18, is not a will invalidating statute. The legislative intent behind 15 V.I.C. Sec. 18 was to obviate the need for the testator, through express testamentary language, to disinherit or omit children born before execution of the will. Further, the language of 15 V.I.C. Sec. 18 is narrow to include only children born after the execution of the will. The plain language of 15 V.I.C. Sec. 18 of not requiring a testator to expressly disinherit or omit a child from a will evinces a legislative intent to completely replace section 7, Chapter 10, Title II of the 1921 Code. In sum, we find the testator's will valid, as it meets all the testamentary formalities; and the will's lack of express language disinheriting petitioners has no effect whatever upon the validity of the will.

Finally, we note, the Uniform Simultaneous Death Act, 15 V.I.C. Sec. 88, does not obtain the result of revocation of testator's will. The simultaneous perishing of a testator and an exclusive beneficiary does not result in the revocation of testator's otherwise valid

will. The purpose of 15 V.I.C. Sec. 88 is simple, and two fold. First, to place the burden of proof upon the contesting party to bring forth evidence of survivorship; second, to create a presumption of survivorship of a deceased spouse to provide for the orderly administration of an estate. Under the factual posture of this case, the inclusion of article 3 in testator's will devising testator's entire estate to a contingent beneficiary, in the event that the beneficiary spouse predeceases testator, obviates the effects of a different disposition under 15 V.I.C. Sec. 88. Accordingly, the will is enforced according to testator's original intent.

## ORDER

This matter initially appeared before this Court on petition by the beneficiary Mr. Oclan Fraser, hereinafter "respondent," through attorney for the estate Roland Scott, to admit decedent's will to probate. Thereafter an Objection to Petition to Admit Will to Probate, and For Appointment of Executor was filed by the natural children of decedent's prior marriage, hereinafter "petitioners," through their attorney Lolita Paiewonsky. Thereafter, respondent moved the Court for Judgment on the Pleadings and to Strike the Objections of petitioners. A response to such motion was filed by petitioners seeking to invalidate decedent's will, and place decedent's estate under the intestacy provisions of the Virgin Islands Probate Code.

The Court, having carefully reviewed the above probate file, including but not limited to extensive memoranda on the legal issues involved in this matter, and being duly informed in the premises underlying the motions of the parties, and based on the reasoning and discussion as set forth in the Memorandum Opinion, it is hereby

ORDERED that Petitioner's motion captioned Heirs' Response to Fraser and Pinney's Reply to the Heir's Motion to Strike Objections to Petition to Admit Will to Probate, and for Appointment of Executor and Motion to Strike and Submission of Affidavits of the Heirs is DENIED.

ORDERED that Respondent's motion captioned Reply to Heirs Response and Objection to Fraser's and Pinney's Motion to Strike

27

Objections to Admit Will to Probate and for Appointment of Executor is GRANTED.

ORDERED that decedent's will is admitted to probate, and that the attorney of the estate, Roland B. Scott, Jr., and executor of the estate, Vincent Pinney, commence legal prosecution to bring about timely conclusion of the above probate.

ORDERED that copies of this Order and the Court's Memorandum Opinion by issued to the attorney for the Heirs, Lolita Paiewonsky, and attorney for the estate Roland B. Scott Jr., 140 Tumble Weed Rd., San Dia Park, New Mexico 87047.

DONE AND SO ORDERED this 11th Day of April, 1997.